# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALEXANDER E. JACKSON, JACKSON DESCENDANTS' 2002 TRUST AND AEJ HOLDCO LTD., individually and derivatively on behalf of Polygon Credit Holdings Limited and Polygon Credit Management Holdings, L.P.,<br><br>Plaintiffs,<br><br>v.<br><br>READE E. GRIFFITH, PATRICK G.G. DEAR, GREVILLE WARD, REG HOLDCO II LTD., POLYGON CREDIT HOLDINGS LIMITED, TETRAGON FINANCIAL MANAGEMENT GP LLC, TETRAGON FINANCIAL MANAGEMENT, L.P., JEFFREY HERLYN, MICHAEL ROSENBERG, DAVID WISHNOW, GRIFFITH DESCENDANTS' 2002 TRUST, HRW HOLDINGS LLC, AND OTHER UNKNOWN PERSONS,<br><br>Defendants. | Civil Action No.<br><br>NOTICE OF REMOVAL |

Defendants Polygon Credit Holdings, Ltd. ("Parent Company"), Tetragon Financial Management GP LLC ("Tetragon GP"), Tetragon Financial Management, L.P. ("TFM LP"), Reade E. Griffith, REG Holdco II Ltd. ("REG Holdco"), the Griffith Descendants' 2002 Trust (the "Griffith Trust") and Patrick "Paddy" Dear hereby remove the above-captioned action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York, pursuant to 9 U.S.C. § 205 on the ground that the subject matter of the action relates to an arbitration agreement falling under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958, T.I.A.S. No. 6997, implemented at 9 U.S.C. § 201 *et seq.*) (the "New York Convention").

**I.**   **Basis for Removal**

1.      The action is subject to removal to federal court pursuant to the New York

Convention and 9 U.S.C. § 205 in that:  (1) plaintiffs' claims relate to and rely upon two written

agreements — the Amended and Restated Limited Partnership Agreement for TFM LP, dated as

of July 1, 2005 (the "2005 Amended LP Agreement"), operative from July 2005 through October

2017; and the currently operative Second Amended and Restated Limited Partnership Agreement

for TFM LP, dated October 26, 2017 (the "2017 Amended LP Agreement") — each of which

contains a mandatory arbitration clause that requires all disputes arising out of or related in any

way to the Agreements to be arbitrated in New York City; (2) the United States is a signatory to

the New York Convention; (3) the subject matter of the dispute — a challenge to an incentive fee

reimbursement plan used by TFM LP, the investment manager of an international investment

fund complex, to compensate personnel — is commercial; and (4) the arbitration agreements, as

well as the relationship among the parties, are not entirely domestic because:  (a) they are not

"entirely between citizens of the United States" as well as (b) because the relationship also

"involves property located abroad, envisages performance and enforcement abroad, or has some

other reasonable relation with one or more foreign states" — namely, the United Kingdom,

Guernsey, the Cayman Islands and St. Kitts and Nevis.  *See* 9 U.S.C. § 202.  Upon removal,

defendants intend to move to compel arbitration and to stay the action in favor of arbitration.

*Id.* § 206.

**II.**   **Defendants Removing Pursuant to This Notice**

2.      **Polygon Credit Holdings Ltd. ("Parent Company"):**  Parent Company is a

Cayman Islands limited company with its principal place of business outside the United States.

Parent Company has three stockholders:  Defendant REG Holdco II Ltd. (40%), a Cayman

Islands limited company controlled by defendant Reade Griffith; defendant Patrick "Paddy" Dear (20%); and plaintiff AEJ Holdco (40%), a Cayman Islands limited company controlled by plaintiff Alexander Jackson.  Parent Company is the sole member and controlling parent of Tetragon GP, the General Partner of TFM LP, and accordingly controls TFM LP.  Defendant Griffith, a national of the United Kingdom and of St. Kitts and Nevis who resides and maintains his principal place of business in London, United Kingdom, is managing director of Parent Company.  Parent Company is a direct signatory of the 2005 Amended LP Agreement and an indirect signatory of the 2017 Amended LP Agreement as the controlling parent of Tetragon GP (a direct signatory to both Agreements), having approved, authorized and consented both to that Agreement and to its being executed by Tetragon GP.  Parent Company is named as both a derivative plaintiff and a defendant in this action.

3.       **Tetragon Financial Management GP LLC ("Tetragon GP"):**  Tetragon GP is a Delaware limited liability company with its principal place of business in London.  It is a direct signatory to both the 2005 Amended LP Agreement and the 2017 Amended LP Agreement, and is the sole general partner of TFM LP and of Polygon Holdings, TFM LP's intermediate parent.  Tetragon GP is a named defendant in this action.

4.       **Tetragon Financial Management, L.P. ("TFM LP"):**  TFM LP is a Delaware limited partnership with offices in London and New York that serves as investment manager to Tetragon Financial Group Limited ("Tetragon Fund" or the "Fund"), a publicly traded closed-end investment company based in Guernsey whose shares trade on the Euronext exchange in Amsterdam and the London Stock Exchange.  TFM LP is controlled and managed by its General Partner, Tetragon GP, which in turn is controlled and managed by Parent Company via its managing director, defendant Griffith.  TFM LP was governed by the 2005 Amended LP

Agreement until October 2017, and since then it has been governed by the 2017 Amended LP Agreement.

5.     **Reade Griffith:**  Griffith is a national of the United Kingdom and St. Kitts and Nevis.  He resides and maintains his principal place of business in London, United Kingdom, acts as Parent Company's managing director and controls REG Holdco II Ltd, a Cayman Islands limited company that holds 40% of Parent Company's voting stock.

6.     **REG Holdco II Ltd. ("REG Holdco"):**  REG Holdco is a limited company organized under the laws of the Cayman Islands.  Defendant Griffith controls his 40% interest in Parent Company through REG Holdco.

7.     **Griffith Descendants' 2002 Trust (the "Griffith Trust"):**  The Griffith Trust was a trust created by defendant Griffith for the benefit of his spouse and issue.  The Griffith Trust no longer exists.  Defendants Griffith, REG Holdco and the Griffith Trust may be referred to herein as the "Griffith Defendants".

8.     **Paddy Dear:**  Dear is a national of the United Kingdom who resides and maintains his principal place of business in London.  Dear holds a 20% interest in Parent Company.

### III.    Other Parties Named in Complaint

9.     **Alexander Jackson:**  Plaintiff Jackson is a U.S. citizen who resides in Riverside, Connecticut.  Together with plaintiff Jackson Descendants' 2002 Trust, plaintiff Jackson holds and controls his Cayman Islands-based holding company, plaintiff AEJ Holdco.

10.     **Jackson Descendants' 2002 Trust ("Jackson Family Trust"):**  Plaintiff Jackson Family Trust is a trust established by Alexander Jackson of which Daniel E. Jackson is trustee and plaintiff Alexander Jackson is donor and investment trustee.

11.     **AEJ Holdco Ltd. ("AEJ Holdco"):**  Plaintiff AEJ Holdco is a Cayman Islands limited company through which plaintiff Jackson holds his 40% interest in Parent Company. Plaintiffs Jackson, the Jackson Family Trust and AEJ Holdco may be referred to herein as the "Jackson Plaintiffs".

12.     **Polygon Credit Management Holdings LP ("Polygon Holdings"):**  Polygon Holdings is a Delaware limited partnership with its principal place of business in London.  It holds a 55.87% limited partnership interest in TFM LP.  Polygon Holdings' Limited Partners are Parent Company, Griffith and Dear, and its General Partner is Tetragon GP.  It is named as a derivative plaintiff.

13.     **Greville Ward:**  Defendant Ward, a United Kingdom national resident in Mauritius, is a former director of Parent Company.

14.     **HRW Holdings LLC ("HRW"):**  Defendant HRW is a Delaware limited liability company whose three members were Jeffrey Herlyn, Michael Rosenberg and David Wishnow.  On October 26, 2017, upon adoption of the 2017 Amended LP Agreement, HRW was dissolved.  Prior to that date, HRW and Polygon Holdings were the two limited partners of TFM LP (each holding a 50% stake).  Upon HRW's dissolution in October 2017, its individual members, Herlyn, Rosenberg and Wishnow, succeeded HRW as Limited Partners of TFM LP with a combined 50% limited partnership interest in TFM LP.  Its interest is now reduced to 44.13%.

15.     **Jeffrey Herlyn:**  Herlyn is a U.S. citizen residing in Connecticut.  Upon the execution of the 2017 Amended LP Agreement on October 26, 2017, Herlyn became a limited partner of TFM LP.  In September 2018, Herlyn retired from TFM LP and currently holds a

6.87% limited partnership interest in TFM LP.  He is a defendant in this action and, together with defendants Rosenberg and Wishnow, holds a 44.13% limited partnership interest in TFM LP.

16.     **Michael Rosenberg:**  Rosenberg is a U.S. citizen residing in New Jersey.  Upon the execution of the 2017 Amended LP Agreement on October 26, 2017, Rosenberg became a limited partner of TFM LP.  He currently holds an 18.63% limited partnership interest in TFM LP.

17.     **David Wishnow:**  Wishnow is a U.S. citizen residing in New Jersey.  Upon the execution of the 2017 Amended LP Agreement on October 26, 2017, Wishnow became a limited partner of TFM LP.  He currently holds an 18.63% limited partnership interest in TFM LP. Pursuant to their ownership interests in TFM LP, Herlyn, Rosenberg and Wishnow are entitled to distributions of 44.13% of TFM LP's net income, and Griffith, Jackson and Dear, by reason of their interests in Parent Company, are entitled to the other 55.87%.

## IV.     Nature of Action

18.     This is an action brought by plaintiffs Jackson, AEJ Holdco and the Jackson Family Trust both directly and purportedly derivatively on behalf of Parent Company and Polygon Holdings, with the former also named as a defendants.  At the core of all causes of action in the complaint is an incentive fee reimbursement plan adopted by TFM LP in 2007, and thereafter amended and expanded in 2014 (the "Incentive Fee Reimbursement Plan" or "Plan"). The Plan provides reimbursement — to personnel of TFM LP and its affiliates who hold shares in the Fund — of incentive fees paid by the Fund to TFM LP based on such personnel's pro rata holding of such shares.

19.     Plaintiffs bring claims under both the 2005 Amended LP Agreement and the 2017 Amended LP Agreement.  Nevertheless, the 2005 Amended LP Agreement governs the period

from July 1, 2005 to October 26, 2017, during which the Incentive Fee Reimbursement Plan was adopted and during which all of the allegedly improper decisions complained of by plaintiffs occurred — including the alleged exclusion of plaintiff Jackson from the Incentive Fee Reimbursement Plan in 2013 and the alleged wrongful expansion of the Incentive Fee Reimbursement Plan effective as of the first quarter of 2014.  Both the 2005 Amended LP Agreement and the 2017 Amended LP Agreement provide for mandatory arbitration of any dispute or controversy arising out of or related to the LP Agreements, the affairs or the rights and interests of TFM LP's partners and principals, or any alleged or actual breach of the LP Agreements.

20.     Plaintiffs allege that defendants improperly excluded plaintiff Jackson from the Incentive Fee Reimbursement Plan and that defendants devised and executed the Plan so as to wrongfully deprive plaintiffs of millions of dollars in distributions that would otherwise have flowed to them.  Plaintiffs allege that defendant Griffith, along with defendant Dear, were the primary beneficiaries of such diversion.  Among other claims, plaintiffs assert direct causes of action for breach of contract as alleged third-party beneficiaries of the 2005 Amended LP Agreement and the 2017 Amended LP Agreement, as well as purported derivative claims on behalf of Polygon Holdings for breach of those same Agreements, claims for breach of fiduciary duty, breach of the Parent Company's corporate charter and unjust enrichment.  Plaintiffs seek, *inter alia*, monetary damages and a judicial declaration that the Incentive Fee Reimbursement Plan is void.

## V.     This Action is Removable Under the New York Convention

21.     Removal of this action is proper under the New York Convention and the statutory provisions of the Federal Arbitration Act ("FAA") enacted by Congress to implement the New York Convention.  9 U.S.C. § 201 *et seq.*  A dispute is subject to removal under the

New York Convention and Chapter 2 of the FAA if:  (1) there is a written agreement; (2) that

provides for arbitration in the territory of a signatory of the Convention; (3) the subject matter of

the relationship is commercial; and (4) the relationship is not entirely domestic in scope.

9 U.S.C. § 201-206.

    **1.  There Is a Binding, Written Agreement to Arbitrate**

    22.    Both the 2005 Amended LP Agreement and the 2017 Amended LP Agreement

provide that all disputes and controversies are to be resolved through binding arbitration in New

York City:

> Subject to the Partnership's right to seek injunctive relief pursuant to Sections 9.4 and 9.12(d), **to the fullest extent permitted by law, any dispute, controversy or claim arising out of or relating to this Agreement or to the Partnership's affairs or the rights or interests of the Partners or the Principals or the breach or alleged breach of this Agreement**, whether arising during the Partnership term or at or after its termination or during or after the liquidation of the Partnership, **shall be settled by arbitration in New York City** (or, if applicable law requires some other forum, then such other forum) **in accordance with the rules then obtaining of the American Arbitration Association**.  If the parties to any such controversy are unable to agree upon a neutral arbitrator or arbitrators, then an arbitrator shall be appointed in accordance with such rules. Any award in an arbitration initiated under this Section 9.1 shall be final and binding and judgment may be entered in any court having jurisdiction thereof; provided that any such award shall be limited to monetary damages and shall include no injunction or direction to any par other than the direction to pay a monetary amount.  The Parties and the Principals consent to the nonexclusive jurisdiction of the Supreme Court of the State of New York, and of the United States District Court for the Southern District of New York, for all purposes in connection with any such arbitration. The Parties and the Principals agree that any process or notice of motion or other application to either of such courts, and any paper in connection with any such arbitration, may be served by certified mail, return receipt requested, or by personal service or in such other manner as may be permissible under the rules of the applicable court or arbitration tribunal, provided a reasonable time for appearance is allowed. Except as may be otherwise required by law in connection with the winding up, liquidation and dissolution of the Partnership, each Partner hereby irrevocably waives any and all rights that it may have to maintain an action for judicial accounting or for partition of any of the Partnership's property.  (Emphasis supplied.)[1]

---

[1] The agreements define "Partnership" to mean TFM LP, "Partner" to mean "any person who is a partner of the Partnership, whether as a General Partner or as a Limited Partner", and "Principal" to mean Herlyn, Rosenberg,

23.    All of plaintiffs' claims "aris[e] out of or relat[e] to" the 2005 Amended LP Agreement or to the rights, affairs or interests of TFM LP or TFM LP's Partners or Principals, or to a breach or alleged breach of the 2005 Amended LP Agreement.  To the extent that plaintiffs claim ongoing wrongs, they may also be said to "aris[e] out of or "relat[e]" to the 2017 Amended LP Agreement, and to the rights, affairs or interests of TFM LP or TFM LP's Partners or Principals, or to a breach or alleged breach of the 2017 Amended LP Agreement.

**A.  All of the parties are required to or entitled to arbitrate plaintiffs' claims.**

24.    All of the parties[2] have the right to invoke and/or are bound by these arbitration clauses.  Certain of the parties are signatories — either directly or by way of agency — to one or more of the 2005 and 2017 Amended LP Agreements:

*Direct and Indirect Signatories*

- Parent Company, a foreign national entity, is a signatory to the 2005 Amended LP Agreement.  It is also an indirect signatory to the 2017 Amended LP Agreement in that plaintiffs allege throughout the complaint that Parent Company dominates and controls Tetragon GP, and Tetragon GP is a direct signatory to both the 2005 Amended LP Agreement and the 2017 Amended LP Agreement.  Moreover, signing of the 2017 Amended LP Agreement by Tetragon GP, per the Articles of Association of Parent Company, required express approval by resolutions of the Parent Company, which approval was forthcoming.

---

Wishnow (i) "for so long as each is a member of HRW" (under the 2005 Amended LP Agreement) or (ii) "includ[ing] the estate of any such individual that has become the transferee of such Principal's interest in the Partnership by operation of law" (under the 2017 Amended LP Agreement ).

[2] A number of the parties named as defendants may not ultimately be served and/or may not be subject to personal jurisdiction.  Nothing in this Notice of Removal shall be deemed to constitute any consent to jurisdiction as to any named defendant.  Nor shall anything in this Notice of Removal be deemed to acknowledge the merit of any claim by plaintiffs.

- Tetragon GP is a direct signatory of both the 2005 and the 2017 Amended LP Agreements.[3]

- Derivative plaintiff Polygon Holdings is a direct signatory of the 2017 Amended LP Agreement.

- Defendant Griffith, a foreign national, and foreign entity REG Holdco, a Cayman Islands limited company with its principal place of business outside the United States, are indirect signatories of the 2017 Amended LP Agreement. Per the Parent Company Articles of Association, REG Holdco's (and thus Griffith's) approval was required before Tetragon GP could enter into the 2017 Amended LP Agreement. In October 2017, defendant Griffith signed a resolution on behalf of REG Holdco approving, authorizing and consenting in all respects to the 2017 Amended LP Agreement.

- Defendant Griffith further signed the 2017 Amended LP Agreement as an Authorised Representative of Tetragon GP, the General Partner. He also signed the 2017 Amended LP Agreement as Authorised Representative of Polygon Holdings, a Limited Partner in TFM LP. Plaintiffs allege that Tetragon GP "can only act through its sole member, [Parent Company], for which defendant Griffith acts as the 'managing director'", and that Tetragon GP lacks any other governance. Compl. ¶¶ 48, 78, 87, 88, 96. Griffith serves as managing director of Parent Company from London.

---

[3] That 2005 Amended LP Agreement was signed on behalf of "Polygon Credit Management GP LLC", the name by which Tetragon GP was formerly known. *See* Compl. at 1 (naming "Tetragon Financial Management GP LLC f/k/a Polygon Credit Management GP LLC" as a defendant).

- Defendant Dear is a foreign national.  He signed the 2005 Amended LP Agreement as "Principal" of Tetragon GP.  He likewise signed an individual resolution on behalf of Parent Company approving, authorizing and consenting in all respects to the 2017 Amended LP Agreement.

- Plaintiffs Alexander Jackson and his Cayman Islands holding company, AEJ Holdco, are indirect signatories of the 2017 Amended LP Agreement.  Per the Parent Company's Articles of Association, AEJ Holdco was also required to approve the independent resolution providing AEJ Holdco's consent for TFM LP to enter into the 2017 Amended LP Agreement.  Plaintiff Alexander Jackson provided such consent by signing a resolution expressly approving, authorizing and consenting to the 2017 Amended LP Agreement on behalf of AEJ Holdco.

- HRW is a direct signatory of the 2005 Amended LP Agreement.  HRW also signed the 2017 Amended LP Agreement in October 2017 to reflect its withdrawal as a Limited Partner.

- Defendants Herlyn, Rosenberg and Wishnow are direct signatories of the 2017 Amended LP Agreement.

***Additional Bases for Arbitrability***

25.     The parties are also subject to arbitration of the disputes herein for the reasons set forth below:

- The Jackson Plaintiffs are further bound by the arbitration provisions of the 2005 and 2017 Amended LP Agreements in that:

  - As noted above, Parent Company's Articles of Association required the consent of plaintiff AEJ Holdco — the entity through which plaintiff

Jackson holds his 40% stake in Parent Company — before the parties could enter into the 2017 Amended LP Agreement.  Compl. ¶¶ 2, 12, 43. AEJ Holdco gave such consent by resolution dated October 26, 2017 (Compl. ¶ 71), which was signed plaintiff Alexander Jackson on behalf of AEJ Holdco and as Investment Trustee of the Jackson Family Trust.

▪ These plaintiffs bring breach of contract claims for — and thus assert they have authority to enforce the terms of the 2005 Amended LP Agreement and the 2017 Amended LP Agreement, and are accordingly bound by the arbitration provisions thereof.  Compl. ¶¶ 76-90.

▪ These plaintiffs assert that they are intended third-party beneficiaries entitled to enforce the provisions of the 2005 and 2017 Amended LP Agreements, and they are accordingly bound by the arbitration provisions thereof.  Compl. ¶¶ 39, 79, 88, 121.

▪ The Plan aside, these plaintiffs, by reason of their 40% interest in Parent Company, have received multimillion dollar benefits from the 2005 and the 2017 Amended LP Agreements for more than a decade.  The complaint alleges that "the Founders" — a defined term per the complaint that includes plaintiff Jackson — entered into the LP Agreements "for the exclusive purpose of earning management and incentive fees to be distributed as net income to them" (*i.e.*, to receive a benefit — distributions of money — from the Agreements).  Compl. ¶ 79. Accordingly, they are bound by the arbitration provisions thereof.

▪ Moreover, the 2017 Amended LP Agreement was highly desirable to plaintiff Jackson because it provided for the winding down of Herlyn's, Rosenberg's and Wishnow's 50% interest in TFM LP (Compl. ¶ 73) — currently 44.14% following Herlyn's retirement — meaning that the Jackson Plaintiffs' interest in the profits of TFM LP flowing to Parent Company would double over time.  These plaintiffs are therefore bound by the arbitration provisions of that Agreement.

▪ The Jackson Plaintiffs bring direct and derivative claims for breach of contract against defendants Griffith and Dear, including for alleged breaches of the 2005 Amended LP Agreement and the 2017 Amended LP Agreement.  Compl. ¶¶ 76-111.  The complaint repeatedly alleges that defendants Griffith and Dear dominate and control Tetragon GP (a direct signatory to both the 2005 and 2017 Amended LP Agreements) and Parent Company (a direct signatory to the 2005 Amended LP Agreement and an indirect signatory to the 2017 Amended LP Agreement), Compl. ¶¶ 6, 21, 74, 78, 87, 93, 96, 108, and the Jackson Plaintiffs are accordingly bound by the arbitration provisions thereof.

▪ The Jackson Plaintiffs purport to assert derivative claims on behalf of a second derivative plaintiff, Polygon Holdings, for alleged breaches of the 2005 Amended LP Agreement and the 2017 Amended LP Agreement.  Compl. ¶¶ 91-111.  These plaintiffs further allege that Polygon Holdings can act only through its general partner, Tetragon GP, Compl. ¶¶ 93, 105, 127, 163, 173, 200, a direct signatory to both the 2005 and the 2017

- 13 -

Amended LP Agreements.  Plaintiffs also claim that Polygon Holdings is
dominated and controlled by and can only act through Parent Company,
*see id.*, a direct signatory to the 2005 Amended LP Agreement and an
indirect signatory of the 2017 Amended LP Agreement, and the Jackson
Plaintiffs are accordingly bound by the arbitration provisions of these
Agreements.

- Defendants are further entitled to invoke the arbitration provisions of the 2005
  and 2017 Amended LP Agreements in that:

  - As previously noted, Parent Company is a Cayman Islands entity with its
    principal place of business outside the United States that is controlled by
    defendants and foreign nationals Griffith and Dear, with Griffith serving
    as managing director of the entity from London.  Compl. ¶¶ 17, 93.  Parent
    Company is named both as a derivative plaintiff in this action as well as a
    named defendant on plaintiffs' claims alleging breaches of the 2005 and
    2017 Amended LP Agreements.  Compl. ¶¶ 76-111, 125-132.
    Accordingly, it is entitled to invoke the arbitration provisions of the
    Agreements.

  - Tetragon GP is a defendant on multiple counts of the complaint purporting
    to allege breaches of the 2005 and 2017 Amended LP Agreements.
    Compl. ¶¶ 76-111.  (And, as previously noted, it is a signatory to both the
    2005 Amended LP Agreement and the 2017 Amended LP Agreement.)
    Accordingly, Tetragon GP is entitled to invoke the arbitration provisions
    of the Agreements.

- TFM LP is a named defendant sued for a declaratory judgment nullifying the Incentive Fee Reimbursement Plan adopted pursuant to the powers afforded to it under the 2005 and the 2017 Amended LP Agreements, the Agreements containing the arbitration clauses.  Accordingly, it is entitled to invoke the arbitration provisions of the Agreements.

- Plaintiffs name principal defendants Griffith and Dear (foreign nationals), as well as REG Holdco and Parent Company (foreign entities) on Counts 1-4, which allege direct breaches of the 2005 and 2017 Amended LP Agreements, as well as derivative breaches of the 2005 Amended LP Agreement and the 2017 Amended LP Agreement on behalf of derivative plaintiff Polygon Holdings.  Compl. ¶¶ 76-111.  Accordingly, these defendants are entitled to invoke the arbitration provisions of the Agreements.

- Plaintiffs allege that defendant Griffith dominates and controls REG Holdco, and plaintiffs' complaint names REG Holdco as a defendant on plaintiffs' direct and derivative claims for breach of both the 2005 Amended LP Agreement and the 2017 Amended LP Agreement.  Compl. ¶¶ 78, 87, 96, 108.  REG Holdco is a Cayman Islands limited company controlled by Griffith that holds a 40% stake in the Parent Company. Compl. ¶ 17.  Accordingly, these defendants are entitled to invoke the arbitration provisions of the Agreements.

- Plaintiffs also name the Griffith Trust for unjust enrichment (Count 15), alleging that the Griffith Trust has obtained a portion of the incentive fee

rebate that was diverted from plaintiffs.  Compl. ¶¶ 192-197.  The Griffith

Trust no longer exists.  Nevertheless, if made a party, it would be entitled

to invoke the arbitration provisions in that plaintiffs allege that it was

dominated and controlled by defendants Griffith and REG Holdco, and

because plaintiffs allege that it was unjustly enriched through the wrongful

diversion of funds paid out under the Incentive Fee Reimbursement Plan, a

compensation arrangement adopted pursuant to the 2005 Amended LP

Agreement and continued under the 2017 Amended LP Agreement.

- ▪ Plaintiffs also name defendant Ward, a foreign national and former

  director of Parent Company, for alleged breaches of fiduciary duty and

  waste of partnership assets.  Compl. ¶¶ 119-138, 198-206.  Plaintiffs

  allege that defendants Griffith, Dear and Ward control and dominate

  Parent Company (a direct signatory of the 2005 Amended LP Agreement

  and an indirect signatory of the 2017 Amended LP Agreement) and

  Tetragon GP (a direct signatory of both LP Agreements).  Compl. ¶ 21.  If

  made a party, defendant Ward would thus be entitled to invoke the

  arbitration provisions of the Agreements.

**B.  All of the claims fall within the scope of the arbitration provisions.**

26.     All of plaintiffs' claims — whether breach of the 2005 and 2017 Amended LP

Agreements, breach of fiduciary relationship with respect to such Agreements, alleged improper

changes to the Incentive Fee Reimbursement Plan adopted and then modified pursuant to the

powers afforded to TFM LP under such Agreements, asserted lack of power to modify such Plan,

asserted wrongful termination of plaintiff Jackson's participation in the Plan, unjust enrichment

by reason of claimed diversion of dollars payable under the Plan, nullification of the Plan or

demand for an accounting — arise out of or relate to the Incentive Fee Reimbursement Plan adopted and then amended by TFM LP, including the allegedly wrongful exclusion of plaintiff Jackson from the Incentive Fee Reimbursement Plan and the allegedly wrongful expansion of the Plan effective as of the first quarter of 2014.

27.     All such claims are arbitrable in that they arise out of or relate to the 2015 Amended LP Agreement, the 2017 Amended LP Agreement, TFM LP's affairs, the rights or interests of its Partners or Principals and/or the breach or alleged breach of the Agreements.

## 2. The Agreements Provide for Arbitration in the United States, a Signatory to the New York Convention

28.     For the New York Convention to apply, the written agreement to arbitrate must provide for arbitration in the territory of a signatory of the Convention.  As set forth above, *see supra* ¶ 22, the 2005 Amended LP Agreement and the 2017 Amended LP Agreement require that any dispute or controversy arising out of or related to those Agreements "shall be settled by arbitration in New York City . . . in accordance with the rules then obtaining of the American Arbitration Association", unless applicable law requires arbitration in another forum.  None does.

## 3. The Subject Matter of the Relationship Is Commercial

29.     The New York Convention requires that an arbitration agreement arise out of a relationship "which is considered as commercial" in nature.  9 U.S.C. § 202.  The 2005 Amended LP Agreement and the 2017 Amended LP Agreement each concern a relationship that is "commercial" — the purpose of the partnership, as expressly set forth in the Agreements, was and is to act as investment manager and to provide investment management services to Tetragon Fund, in return for payment of management and incentive fees.

30.     TFM LP then implemented the Incentive Fee Reimbursement Plan as an element of the compensation package available to its personnel and affiliates.  The purpose of the Plan is to facilitate the business of TFM LP, its affiliates and the Tetragon Fund by encouraging Fund management to invest in the Tetragon Fund, to hold those investments for the long term, to align the interests of such personnel with those of public investors in that Fund, and to incentivize such personnel with added compensation.

### 4.   The Relationship Between the Parties Is Not "Entirely Domestic" in Scope

31.     The relationship at issue is not entirely domestic in scope.  Disputes are not entirely domestic and are removable to federal court under the New York Convention if:  (1) one or more non-U.S. citizens is a party to the agreement,[4] *or* (2) the relationship (i) "involves property located abroad", (ii) "envisages performance or enforcement abroad" *or* (iii) has "some other reasonable relation with one or more foreign states."  9 U.S.C. § 202; *see id.* § 205.

### A.  The agreements to arbitrate are not solely between U.S. citizens

32.     The 2005 and 2017 Amended LP Agreements are not "entirely between citizens of the United States".  9 U.S.C. § 202.  As detailed above, parties that are either direct or indirect signatories to the 2005 Amended LP Agreement or the 2017 Amended LP Agreement, or are otherwise subject to the arbitration clauses, are not citizens of the United States.  *See supra* ¶¶ 24-25.

### B.  The relationship involves property outside the U.S., envisages performance abroad, and is otherwise related to foreign states

33.     Moreover, the relationships here are not "entirely domestic":  even were all signatories to the arbitration agreements U.S. citizens, removal would nonetheless be proper if

---

[4] The courts generally appear to have so read FAA § 202.  The statute, however, is susceptible to an alternative reading whereby it is the "relationship" — and not the arbitration agreement itself — that requires a non-U.S. citizen.  Although not necessary to this Notice, defendants respectfully reserve their rights with respect to this issue.

*any* of the three statutory alternatives of 9 U.S.C. § 202 noted in Paragraph 31 above is satisfied. Here, all three are plainly satisfied: (1) the relationships involve property located outside the United States, (2) they envisage performance abroad and (3) they have a reasonable relationship to at least four foreign states, including the United Kingdom, Guernsey, the Cayman Islands and St. Kitts and Nevis.

34.     Thus, <u>First</u>, the relationship sued upon involves property located outside the United States. Plaintiffs seek a declaratory judgment voiding the Incentive Fee Reimbursement Plan in its entirety. No less than 20 foreign nationals headquartered in London have been recipients of millions of dollars of payments under the Plan. Should plaintiffs succeed in having the Incentive Fee Reimbursement Plan nullified, these foreign nationals will presumably be required to refund some or all of such monies received and held in the United Kingdom and elsewhere outside the United States. The relationship thus "involves property located abroad".

35.     <u>Second</u>, the 2005 Amended LP Agreement and the 2017 Amended LP Agreement envisage performance outside the United States. Both Limited Partnership Agreements provide that "[t]he overall management and control of the business and affairs of the Partnership [TFM LP] shall be vested with the General Partner [Tetragon GP]." Plaintiffs allege that Tetragon GP has no governance other than being solely owned by Parent Company, a Cayman Islands company that Griffith operates as managing director from his principal place of business in London. Because Griffith, a U.K. and St. Kitts and Nevis national who resides in London, is managing director of the only entity that can authorize conduct by Tetragon GP, which in turn is vested with full control over "[t]he overall management and control of the business and affairs of the Partnership [TFM LP]", each of the 2005 Amended LP Agreement and the 2017 Amended

LP Agreement "envisages performance" — including management and control of the TFM LP— "abroad" (*i.e.*, in the United Kingdom).

36.     And Third, the action being removed has a more-than reasonable relation to foreign countries.  Principal defendants Griffith and Dear — the alleged principal architects and wrongful beneficiaries of the allegedly unlawful scheme to use the Incentive Fee Reimbursement Plan to enrich themselves to the detriment of Jackson — are non-U.S. citizens who live in the United Kingdom.  Plaintiffs Jackson, AEJ Holdco (itself a Cayman Islands company) and the Jackson Trust sue these foreign nationals, demanding millions of dollars in damages for alleged breaches of the 2005 Amended LP Agreement and the 2017 Amended LP Agreement, as well as the Articles of Association of the foreign-national Parent Company.

37.     Moreover, the action being removed is purportedly brought by direct and derivative plaintiffs, including Parent Company, a foreign national, and Polygon Holdings.  The named defendants once again include that Parent Company, as well as principal defendants Griffith (a non-U.S. citizen and national of the United Kingdom and St. Kitts and Nevis) and Dear (a non-U.S. citizen and U.K. national), both of whom reside in London, REG Holdco, a Cayman Islands limited company whose principal place of business is outside of the United States, as well as defendant Ward, a U.K. national and former director of foreign-national Parent Company who resides in Mauritius.

38.     In addition, plaintiffs seek by this action to void the Incentive Fee Reimbursement Plan, which runs in favor of the many foreign nationals who manage the assets of Tetragon Fund, a multibillion dollar publicly traded entity incorporated in Guernsey with its principal place of business in Guernsey whose stock is listed on the Euronext exchange in Amsterdam and the London Stock Exchange.  Nullification of the Plan would impact the compensation of no less

than 20 foreign nationals residing in London who have received and continue to receive payments under the Plan, and would thus jeopardize such personnel's continued service to the Fund.

39.     Based on all of the above, the action therefore plainly is not "entirely domestic" in nature and has a reasonable relationship with persons, entities and property in at least four foreign nations — the United Kingdom, Guernsey, the Cayman Islands and St. Kitts and Nevis.

## VI.    **Defendants' Notice of Removal Is Timely and Procedurally Proper**

40.     This action was commenced in state court by plaintiffs' filing of the complaint on July 23, 2019.  Because the action is newly filed and this Notice is being filed prior to trial, it is removable to federal court.  9 U.S.C. § 205.

41.     Federal subject matter jurisdiction exists under 9 U.S.C. §§ 201-203.  Defendants may thus remove this lawsuit to the district court of the United States embracing the current forum.  9 U.S.C. § 205.  The United States District Court for the Southern District of New York is the federal judicial district that embraces the Supreme Court of the State of New York, County of New York, the forum in which this action is currently pending.

42.     Section 205 further provides that "[t]he procedure for removal of causes otherwise provided by law shall apply".  By this Notice of Removal, defendants hereby remove this action from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.  A copy of the state court docket and all materials filed in the state court are attached hereto as Exhibits 1 through 3.

43.     The removing defendants will promptly file a Civil Cover Sheet in this Court and a Notice of Filing of Notice of Removal in the Supreme Court of the State of New York, County of New York, and serve written notice of such upon all parties to this action.

44.     By filing this Notice of Removal, defendants do not waive and expressly reserve all rights, claims, actions, defenses or setoffs to which they are or may be entitled in law or in equity.

WHEREFORE, pursuant to 9 U.S.C. § 205, defendants hereby remove this action to the United States District Court for the Southern District of New York from the Supreme Court of the State of New York, County of New York.

Dated:  August 7, 2019
New York, New York

Respectfully submitted,

WACHTELL, LIPTON, ROSEN & KATZ

/s/ Herbert M. Wachtell
Herbert M. Wachtell
Bradley R. Wilson
Scott Stevenson
51 West 52nd Street
New York, New York  10019
(212) 403-1000
HMWachtell@wlrk.com

*Attorneys for Defendants Reade E. Griffith,
Patrick G.G. Dear, Polygon Credit Holdings Ltd.,
Tetragon Financial Management GP LLC,
Tetragon Financial Management, L.P., REG
Holdco II Ltd. and the Griffith Descendants'
2002 Trust*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 7th day of August, 2019, a true and correct copy of the foregoing Notice of Removal was served via e-mail and U.S. mail, first-class, postage pre-paid, to the following counsel of record:

> Eric N. Whitney
> Diana E. Mahoney
> Harry K. Fidler
> ARNOLD & PORTER KAYE SCHOLER LLP
> 250 West 55th Street
> New York, New York  10019
> (212) 836-8000 (telephone)
> (212) 836-8689 (facsimile)
> eric.whitney@arnoldporter.com
> diana.mahoney@arnoldporter.com
> harry.fidler@arnoldporter.com
>
> *Attorneys for Plaintiffs*

/s/ Scott Stevenson