# EXHIBIT 1

Case 1:19-cv-07391-DLC Document 1-1 Filed 08/07/19 Page 2 of 56

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| ALEXANDER E. JACKSON, JACKSON DESCENDANTS' 2002 TRUST AND AEJ HOLDCO LTD., individually and derivatively on behalf of Polygon Credit Holdings Limited, and Polygon Credit Management Holdings LP, | Index No. Date Index No. Purchased:_____ |

Plaintiffs,

-against-

READE E. GRIFFITH, PATRICK G. G. DEAR, GREVILLE WARD, REG HOLDCO II, POLYGON CREDIT HOLDINGS LIMITED, TETRAGON FINANCIAL MANAGEMENT GP LLC, TETRAGON FINANCIAL MANAGEMENT LP, JEFFREY HERLYN, MICHAEL ROSENBERG, DAVID WISHNOW, GRIFFITH DESCENDANTS' 2002 TRUST, HRW HOLDINGS LLC, AND OTHER UNKNOWN PERSONS

**SUMMONS**

Defendants.

TO THE ABOVE NAMED DEFENDANTS:

Polygon Credit Holdings Limited
399 Park Avenue
New York, NY 10022

Tetragon Financial Management
GP LLC f/k/a Polygon Credit
Management GP LLC
399 Park Avenue
New York, NY 10022

Tetragon Financial Management LP
f/k/a Polygon Credit Management
LP
399 Park Avenue
New York, NY 10022

REG Holdco II

c/o Polygon Global Partners LLP
4 Sloane Terrace
London, X0 SW1X9DQ
United Kingdom

Reade E. Griffith
c/o Polygon Global Partners LLP
4 Sloane Terrace
London, X0 SW1X9DQ
United Kingdom

Patrick G. G. Dear
c/o Polygon Global Partners LLP
4 Sloane Terrace,
London, United Kingdom, SW1X
9DQ United Kingdom

Greville Ward
c/o Fundsmith LLP
33 Cavendish Square
London, United Kingdom W1G
0PW

Jeffrey Herlyn
12 Longmeadows Road
Wilton, CT 06897-1101

Michael Rosenberg
1 Karlin Drive
Chatham, NJ 07928

David Wishnow
52 Dorison Drive
Short Hills, NJ 07078-1701

Griffith Descendants' 2002 Trust
Attn: Reade E. Griffith
c/o Polygon Global Partners LLP
4 Sloane Terrace
London, X0 SW1X9DQ
United Kingdom

HRW Holdings LLC
2394 PLAYERS CT
WELLINGTON, FL 33414-6285

YOU ARE HEREBY summoned and required to submit to plaintiff's attorney your answer to the complaint in this action within 20 days after the service of this summons.  In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of the venue designated is pursuant to the agreement of the parties and the residence of the plaintiffs.

Dated:      New York, New York
            July 23, 2019

                                    Respectfully Submitted,

                                    ARNOLD & PORTER KAYE SCHOLER LLP


                            By: ___/s/ Eric N. Whitney_____
                                    Eric N. Whitney
                                    Diana E. Mahoney
                                    Harry K. Fidler
                                    250 West 55th Street
                                    New York, New York 10019
                                    (212) 836-8000 (Telephone)
                                    (212) 836-8689 (Facsimile)
                                    eric.whitney@arnoldporter.com
                                    diana.mahoney@arnoldporter.com
                                    harry.fidler@arnoldporter.com

                                    *Attorneys for Plaintiffs*

3

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

ALEXANDER E. JACKSON, JACKSON
DESCENDANTS' 2002 TRUST AND
AEJ HOLDCO LTD., individually and derivatively on
behalf of Polygon Credit Holdings Limited, and Polygon
Credit Management Holdings LP,

                        Plaintiffs,

        -against-

READE E. GRIFFITH, PATRICK G. G. DEAR,
GREVILLE WARD, REG HOLDCO II, POLYGON
CREDIT HOLDINGS LIMITED, TETRAGON
FINANCIAL MANAGEMENT GP LLC, TETRAGON
FINANCIAL MANAGEMENT LP, GREVILLE WARD,
JEFFREY HERLYN, MICHAEL ROSENBERG, DAVID
WISHNOW, GRIFFITH DESCENDANTS' 2002 TRUST,
HRW HOLDINGS LLC, AND OTHER UNKNOWN
PERSONS

                        Defendants.

---

Index No.

Date Index No.
Purchased:_____

**COMPLAINT**

---

Plaintiffs Alexander E. Jackson ("Jackson"), the Jackson Descendants' 2002 Trust (the

"Jackson Trust"), and AEJ Holdco Ltd. ("AEJ Holdco") proceeding individually and derivatively

on behalf of Polygon Credit Holdings Limited ("PCH") and Polygon Credit Management

Holdings LP ("PCMH"), for their complaint against Defendants Polygon Credit Holdings

Limited ("PCH"), Tetragon Financial Management GP LLC f/k/a Polygon Credit Management

GP LLC ("TFM GP"), Tetragon Financial Management LP f/k/a Polygon Credit Management

LP ("TFM"), REG Holdco II, Reade E. Griffith ("Griffith"), Patrick G. G. Dear ("Dear"),

Greville Ward ("Ward"), Jeffrey Herlyn ("Herlyn"), Michael Rosenberg ("Rosenberg"), David

Wishnow ("Wishnow"), the Griffith Descendants' 2002 Trust (the "Griffith Trust"), HRW

Holdings LLC ("HRW"), and certain other unknown persons (collectively the "Defendants"),

allege as follows:

## NATURE OF THE ACTION

1.      Plaintiff Jackson, through his ownership and control of Plaintiff AEJ Holdco, is

the co-owner and partner, with entities owned by Defendants Griffith, Dear, Herlyn, Rosenberg

and Wishnow (these individuals, collectively, the "Founders"), of TFM, the investment manager

of Tetragon Financial Group Limited (the "Tetragon Fund" or the "Fund"), a closed-ended

investment company originally formed in 2005 that now has over $2.1 billion in assets. TFM is

governed by a Second Amended and Restated Limited Partnership Agreement dated as of

October 26, 2017. Prior thereto, it was governed by an Amended and Restated Limited

Partnership Agreement dated as of July 1, 2005. As the investment manager of the Fund, TFM

earns a quarterly management fee based on the assets of the Fund as well as a quarterly incentive

fee if the Fund achieves certain financial performance objectives.

2.      Jackson holds his partnership interest in TFM, together with Griffith and Dear, as

a member of Polygon Credit Holdings, Ltd. ("PCH"), a Cayman Islands corporation. PCH, in

turn, owns 100% of the General Partner of TFM, Tetragon Financial Management GP, LLC

("TFM GP"), and 60% of a Limited Partner of TFM, Polygon Credit Management Holdings LP

("PCMH"). Prior to October 2017, Herlyn, Rosenberg and Wishnow together owned the other

Limited Partner of TFM, HRW Holdings, LLC ("HRW"). Pursuant to TFM's Second Amended

and Restated Limited Partnership Agreement Herlyn, Rosenberg and Wishnow succeeded HRW

as Limited Partners in TFM. PCH is governed by an Amended and Restated Memorandum and

Articles of Association dated as of September 29, 2008 (the "PCH Articles"). Among other

things, the PCH Articles require Jackson's consent to (i) any alteration or amendment to the

2

limited partnership agreements of TFM or PCMH or to the limited liability company agreement of TFM GP; (ii) the making of any distribution from any PCH Controlled Entity (defined to include TFM, TFM GP and PCMH) that is not made in accordance with that entity's partnership or limited liability company agreements, as applicable; and (iii) the creation of any arrangements for sharing income or profits of PCH or any PCH Controlled Entity.

3.      In 2007, the Tetragon Fund conducted an initial public offering of its non-voting shares in Europe as a Guernsey closed-ended investment company.  Prior to taking the Tetragon Fund public, the Founders shared the incentive fees received by the Fund's general partner in proportion to their individual investments in the general partner.  In effect, each of the beneficial owners of the Fund received a rebate of the incentive fee paid with respect to their personal investments in the Fund.

4.      This arrangement could not be continued in the same form following the Fund's IPO since public fund shares must be identical in order to be mutually exchangeable on an anonymous public market.  Unable to continue this incentive fee rebate arrangement post-IPO, the Founders nonetheless agreed to continue rebating a portion of the incentive fee, now collected by the Fund's investment manager, TFM, to themselves in proportion to their respective personal investments in the Fund at the time of the IPO.  While the arrangement was never reduced to writing, there were three understood components of the agreement (hereinafter the "Incentive Fee Rebate Arrangement"): (i) 2% of the quarterly incentive fee received by TFM would be deducted and (ii) distributed to the Founders as well as paid as compensation to certain employees of TFM  (iii) based solely on their pro rata ownership of non-voting shares of the Tetragon Fund at the time of the IPO.

3

5.      For the next six years, from 2007 to 2013, in every quarter in which TFM earned an incentive fee, each of the Founders received an incentive fee rebate in accordance with the Incentive Fee Rebate Arrangement.  This practice continued even after Griffith tried unsuccessfully to deprive Jackson of his PCH voting rights in 2008 and thereafter succeeded in converting Jackson to a "consultant" to the Tetragon Fund.  It also continued after Griffith accused Jackson of violating his consultancy agreement in 2011, caused the Tetragon Fund to terminate it, lock Jackson out of the Tetragon offices, and kick Jackson off of the Fund's investment committee.  Notwithstanding Jackson's (primarily involuntary) change in status over this time, TFM continued to gross up his quarterly distributions in accordance with the Incentive Fee Rebate Arrangement from 2008 through early 2013, consistent with the fact that an active management or employment role at TFM had never been a condition to the Founders participating in those distributions pursuant to the Incentive Fee Rebate Arrangement.

6.      In connection with Jackson's quarterly distribution from TFM in August 2013 and without any prior notice to Jackson, TFM, at the direction of the PCH directors other than Jackson, for the first time took the position that active employment by or management of TFM or one of its affiliates was a condition to participating in the Incentive Fee Rebate Arrangement. Thus, TFM claimed, Jackson had "erroneously" been paid incentive fee rebates for nearly five years.  On that basis, TFM, TFM GP, and PCH (under the control and direction of Griffith) unilaterally deducted nearly $1.5 million in prior payments from Jackson's August 2013 partnership distribution, the bulk of which flowed back to Griffith and Dear, as well as Herlyn, Rosenberg and Wishnow, thereby breaching the Incentive Fee Rebate Arrangement and constituting a misappropriation of partnership income earned by Jackson.

4

7.      Jackson did not consent to the foregoing actions.  Nonetheless, Griffith, Dear and the PCH directors other than Jackson continued the Incentive Fee Rebate Arrangement for themselves and the other Founders but excluding Jackson.  Moreover, without Jackson's consent and over his express objection, in 2014, they purported to further "update" the Incentive Fee Rebate Arrangement to (i) include additional employees of TFM and its affiliates who joined after the Tetragon Fund IPO; and (ii) to allocate distributions in proportion to current holdings in the Fund rather than at the time of the IPO.  In addition, over the ensuing years, they caused the amount of incentive fees deducted from TFM and distributed to participants to balloon from 2% to over 20% of the incentive fees earned by TFM, resulting in a diversion of over $5 million and growing (in addition to the $1.5 million deducted in August 2013) from amounts payable to Jackson pursuant to his ownership interest in TFM and the PCH Controlled Entities.

8.      The timing of TFM, TFM GP, PCH, Griffith and Dear's sudden "realization" in 2013 that they had "erroneously" been including Jackson in the Incentive Fee Rebate Arrangement for the prior five years and their subsequent decision to "update" it going forward were not coincidental.  Shortly before doing so, Griffith and Dear had sold their company Polygon Management, LP to the Tetragon Fund for nearly 11.7 million shares of the Fund, which were to vest over five years beginning in 2013.  As a result, their holdings in the Fund would increase exponentially, both relative to Jackson and the other Founders.  Thus, in order to further enrich themselves at the sole expense of Jackson, they concocted their new version of the Incentive Fee Rebate Arrangement, which they would years later attempt to recharacterize as an employee incentive compensation plan.  They thereafter not only continued it but significantly expanded it primarily for their personal gain, in all cases without Jackson's required consent and in violation of their contractual and fiduciary duties to Jackson.

5

9.      Plaintiffs bring this action to recover the payments owed to them by Defendants, who have, under the direction of Griffith, Dear and the PCH directors other than Jackson, misappropriated such funds and distributed them to Griffith, the Griffith Trust, Dear, Herlyn, Rosenberg, Wishnow, and other unknown persons affiliated with the Tetragon Fund.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over TFM because its principal place of business is in New York.  This Court also has jurisdiction over TFM GP and PCH under CPLR § 301 because they dominate and conduct all of their business through TFM.  This Court has jurisdiction over Griffith, Dear, Ward, Herlyn, Rosenberg, Wishnow, the Griffith Trust, and other unknown persons affiliated with the Tetragon Fund under CPLR §§ 301 and 302 because each of them does business in New York and has conducted business in this State in connection with the acts alleged herein.

11.     Venue is proper in this county because TFM's principal offices are located in this county and TFM GP and PCH conduct business through TFM.  Griffith, Dear, Herlyn, Rosenberg, Wishnow, the Griffith Trust and other unknown persons affiliated with the Tetragon Fund conduct business in this county through their work with TFM.

## PARTIES

12.     Plaintiff AEJ Holdco is a Cayman Islands limited company, and owns all of the Class B shares of Defendant PCH (the "Class B Shares").  The Class B Shares represent 40% of the voting shares of PCH.

13.     Plaintiff the Jackson Trust, a trust established November 26, 2002 between Jackson (as donor), Daniel E. Jackson (as Trustee), and Jackson (as investment trustee), together with Jackson owns AEJ Holdco.

6

14.     Plaintiff Jackson, a resident of Riverside, Connecticut, is the Investment Trustee of the Jackson Trust and the sole director of AEJ Holdco.  Jackson owns or controls all of the Class B Shares of PCH either directly or through his ownership and control of the Jackson Trust.  As such, Jackson is a beneficial owner of PCH, PCMH, TFM GP, and TFM (the "PCH Controlled Entities").  Jackson also was a member of the Board of Directors of the Tetragon Fund from late 2008 until early 2011 and continues to hold an ownership interest in the Tetragon Fund through his ownership or control of all of the issued and outstanding Class B voting shares of Polygon Credit Holdings II.  Jackson, together with the Jackson Trust, also is the beneficial owner of approximately 700,000 common non-voting shares in the Tetragon Fund.

15.     Derivative Plaintiff and Defendant PCH is a Cayman Islands exempt limited company.  PCH's principal place of business is at 399 Park Avenue, New York, NY 10022.  The beneficial owners of PCH are Jackson, Griffith and Dear.

16.     Derivative Plaintiff and Defendant PCMH is a Delaware limited partnership.  PCMH's principal place of business is at 399 Park Avenue, New York, NY 10022.  The beneficial owners of PCMH are Jackson (through PCH), Griffith and Dear.

17.     Defendant Griffith owns or controls all of the issued and outstanding Class A shares of PCH ("Class A Shares"), through his ownership and control of Defendant REG Holdco II.  The Class A Shares represent 40% of the voting shares of PCH.  Griffith acts as the "managing director" of PCH.  Under the terms of his appointment, Griffith is not authorized to take any action that would require the consent of Jackson as Class B Member under Article 38 of the PCH Articles.

18.     Defendant Dear owns or controls all of the issued and outstanding Class C shares of PCH ("Class C Shares").  The Class C Shares represent 20% of the voting shares of PCH.

7

19.     Defendant Dear appointed Defendant Ward to serve on the PCH Board of
Directors, and, on information and belief, Defendant Ward acts at the direction and behest of
Defendant Dear.

20.     Defendant TFM GP is a Delaware limited liability company.  TFM GP's principal
place of business is located at 399 Park Avenue, New York, NY 10022.  PCH is the sole member
of TFM GP, which lacks any other governance.  Accordingly, TFM GP can only act through its
sole member, PCH, for which Defendant Griffith acts as the "managing director."  The beneficial
owners of TFM GP are Jackson, Griffith and Dear.

21.     Defendant TFM is a Delaware limited partnership.  TFM's principal place of
business is located at 399 Park Avenue, New York, NY 10022.  TFM is the investment manager
of the Tetragon Fund, which is its only business.  TFM was established by the Founders in order
to collect management and incentive fees from the Tetragon Fund for its distribution to the
Founders, through various holding companies (identified above and below) that serve no other
purpose than to pass through the income of the partnership to the Founders.  The general partner
of TFM is TFM GP, which is responsible for the overall management and control of TFM's
business and affairs.  As a limited partnership, TFM can only act through its general partner,
TFM GP, which itself can act only through its sole member PCH, of which Defendant Griffith
acts as the "managing director," and controls and dominates, along with Defendants Dear and
Ward.  The beneficial owners of TFM are Jackson, Griffith, Dear, Herlyn, Rosenberg and
Wishnow.

22.     Defendant HRW Holdings LLC ("HRW"), a Delaware limited liability company,
along with Polygon Credit Management Holdings LP ("PCMH"), a Delaware limited
partnership, were the two limited partners of TFM until October 26, 2017.

23. Defendants Herlyn, Rosenberg and Wishnow were the members of Defendant HRW until it was dissolved on October 26, 2017. On information and belief, Defendants Rosenberg and Wishnow are residents of New Jersey, and Defendant Herlyn is a resident of Connecticut.

24. The limited partners of TFM since October 26, 2017, are PCMH and Defendants Herlyn, Rosenberg and Wishnow. The general partner of PCMH is TFM GP, which is also the general partner of Defendant TFM. The limited partners of PCMH are Griffith, Dear and PCH.

## FORMATION OF THE TETRAGON FINANCIAL GROUP

25. In 2005, Jackson conceived a plan to establish a private fund that would invest in collateralized loan obligations. In furtherance of this plan, Jackson and the other Founders co-founded a hedge fund group consisting of Tetragon Financial Group Master Fund Limited, a Guernsey company (the "Master Fund"), the Tetragon Fund (formerly known as Tetragon Credit Income Fund Limited), and Tetragon Financial Group LP (formerly known as Tetragon Credit Income Fund LP) (the "Domestic Feeder Fund"). The Tetragon Fund and the Domestic Feeder Fund accepted money from investors and transferred these monies to the Master Fund, which served as the investing vehicle for the group.

26. Defendant TFM (then known as Polygon Credit Management LP) was organized to serve as the investment manager for each of the three funds. As compensation for these services, TFM received a management fee. Section 4.3 of the Polygon Credit Management LP Amended and Restated Limited Partnership Agreement, effective as of July 1, 2005, (the "2005 TFM LPA") stated, subject to certain exceptions not relevant here, that the net income or net loss of TFM would be distributed 49.8% to PCH, 0.2% to TFM GP and 50% to HRW.

9

Case 1:19-cv-07391-DLC   Document 1-1   Filed 08/07/19   Page 14 of 56

27.     Tetragon Financial Group GP LLC (then known as Polygon Credit Income GP LLC), a Delaware limited liability company (the "Domestic GP"), was organized to serve as the general partner of the Domestic Feeder Fund.  The members of Domestic GP were PCH and HRW.  For its services as general partner, the Domestic GP received an incentive fee from the Master Fund consisting of a percentage of the increase in the net asset value of the Master Fund relating to investments made in the Domestic Feeder Fund.

28.     Griffith, Jackson and Dear each made investments in PCH that were invested in the Domestic GP.  Herlyn, Rosenberg and Wishnow each made investments in HRW that were invested in the Domestic GP.  In turn, the Domestic GP made investments in the Domestic Feeder Fund to serve as seed capital.  Under Section 4.3(e) of the operating agreement for the Domestic GP, net income or net loss on any capital invested in the Domestic Feeder Fund was to be allocated solely to the Member that contributed the capital and in proportion to the Member's capital contribution.  This provision caused that portion of the incentive fees relating to investments made by PCH and HRW that were ultimately invested in the Domestic Feeder Fund to be allocated in proportion to their investment.  In turn, PCH and HRW allocated the incentive fees received from the Domestic GP to each of Griffith, Jackson, Dear, Herlyn, Rosenberg and Wishnow, respectively, in proportion to their invested seed capital.  Through this structure, each of the Founders effectively received a rebate of the incentive fee paid with respect to their personal investments in the Master Fund.

29.     The Domestic GP allocated the remainder of the incentive fee collected from other investors in the Domestic Feeder Fund, subject to exceptions not relevant here, 50% to PCH and 50% to HRW.  In turn, PCH distributed these amounts to Griffith, Jackson and Dear (or their designees) in proportion to their share ownership percentage of PCH.

10

## THE TETRAGON FUND GOES PUBLIC

30.     In 2007, the Tetragon Fund conducted an initial public offering (the "IPO") of its non-voting shares in Europe as a Guernsey closed-ended investment company.  The non-voting shares of the Tetragon Fund currently are traded on the Euronext exchange and on the Specialist Fund Segment of the London Stock Exchange.

31.     Investors in the Domestic Feeder Fund were offered the opportunity to exchange their membership interests for non-voting shares of the Tetragon Fund.  After the members of the Domestic Feeder Fund all accepted this offer, it was dissolved.

32.     The Domestic GP, as the general partner of the Domestic Feeder Fund, had no further function and was also dissolved.  As a result, the investments of the Founders in the Domestic Feeder Fund were exchanged for non-voting shares in the Tetragon Fund.

33.     In connection with the IPO, Defendant TFM entered into a new investment management agreement, dated April 26, 2007 (the "Investment Management Agreement"), with the Tetragon Fund and the Master Fund.  The Investment Management Agreement provides that for its services as investment manager, in addition to expense reimbursements, TFM will receive, in relevant part, a management fee calculated and payable monthly, equal to 1.5% per annum of the net asset value of the Tetragon Fund and an incentive fee equal to 25% of the increase in the net asset value of the Tetragon Fund each calendar quarter above a certain hurdle rate.  The income received by TFM pursuant to the Investment Management Agreement constitutes all or substantially all of the income of TFM.  Pursuant to their ownership interests in TFM GP, PCMH, HRW and PCH, the net income of TFM effectively is distributed 50% to Griffith, Jackson and Dear and 50% to Herlyn, Rosenberg and Wishnow, subject to certain limited exceptions not relevant here.

11

## THE FOUNDERS AGREE TO CONTINUE REBATING A PORTION OF THE INCENTIVE FEE TO THEMSELVES

34.     The dissolution of the Domestic Feeder Fund and Domestic GP also eliminated the operating agreement of the Domestic GP.  As a result, the portion of the operating agreement that effectively rebated incentive fees to each of the Founders based on their respective investments in the Master Fund was also eliminated.

35.     Nonetheless, the Founders still sought to continue the Incentive Fee Rebate Arrangement that existed prior to the IPO.  Since public fund shares must be identical in order to be mutually exchangeable on an anonymous public market, the Founders could not, practically, create two classes of stock of the Tetragon Fund, with one class charged an incentive fee and the other not.  As a result, the Founders, around the time of the IPO, decided to continue rebating a portion of the incentive fee, now collected by the Fund's investment manager, TFM, to the Founders of the Fund and certain employees of TFM who also owned shares in the Tetragon Fund at the time of the IPO.

36.     While the Incentive Fee Rebate Arrangement was never reduced to writing, it had three understood components: (i) 2% of the incentive fee received by TFM would be deducted and (ii) distributed to the Founders as well as paid to certain employees of TFM who also owned shares in the Tetragon Fund at the time of the IPO (iii) based solely on their pro rata investment in non-voting shares of the Tetragon Fund at the time of the IPO.

37.     The Incentive Fee Rebate Arrangement was not provided for in the terms of the 2005 TFM LPA or the governing agreements of the other PCH Controlled Entities.  As such, so long as the Founders (including Jackson) all consented to it, the Incentive Fee Rebate Arrangement had the practical effect of modifying the 2005 TFM LPA and the governing

12

agreements of the other PCH Controlled Entities that otherwise provided for the distribution of profits among the Founders exclusively according to the terms of those governing agreements.

38.     From the time of the IPO in 2007 through the quarterly distribution in August 2013, Defendants continued to set aside 2% of the Incentive Fees paid to TFM by the Tetragon Fund and distribute them to the Founders in proportion to their ownership of shares in the Fund at the time of the IPO.  Jackson's portion of that incentive fee rebate was approximately 19%, as Jackson, through AEJ Holdco, owned approximately 19% of the non-voting shares of the Tetragon Fund relative to the shares of the Fund owned by the other Founders at the time of the IPO.  On information and belief, at no time during this period were the Founders employees of TFM or the Tetragon Fund; rather they were the beneficial owners of the partnership interests in TFM and were compensated exclusively through their distributions of TFM's net income and the Incentive Fee Rebate Arrangement.

39.     Further, Defendants in the regular course of business ignored the existence of the intermediary holding companies, and acted as if the Founders were the parties to, and the intended beneficiaries of, the 2005 TFM LPA, including the Incentive Fee Reimbursement Arrangement.  For example, the profits earned by TFM were never distributed to the entities identified in the 2005 TFM LPA, but instead were paid directly by TFM to the Founders themselves or their designees.

## DEFENDANTS GRIFFITH AND DEAR ATTEMPT TO DEPRIVE JACKSON OF HIS VOTING RIGHTS

40.     In 2008, Griffith and Dear locked Jackson out of their offices located at 399 Park Avenue, New York, New York, tried to deprive Jackson of his voting rights in PCH, the parent

13

Case 1:19-cv-07391-DLC   Document 1-1   Filed 08/07/19   Page 18 of 56

of TFM's general partner, and tried to force Jackson to reduce his investment in PCH (through which he collects his portion of the income generated by TFM).

41.    Jackson sued Griffith and Dear in the United Kingdom to enforce his rights in PCH and the PCH Controlled Entities.  As part of the settlement of that action, Jackson agreed to gradually relinquish his rights and economic interests in another fund co-founded by Jackson, Dear and Griffith, Polygon Investments Limited (the "Polygon Fund"), in exchange for certain enhanced protections to his rights in the Tetragon Fund, which were reflected in amendments made to the PCH Articles.  The 2005 TFM LPA remained unchanged.

42.    Since Jackson's entire interest in TFM was, and still is, to continue to participate in the net income of TFM in proportion to his ownership interest, an integral part of the settlement was amendments made to the PCH Articles to ensure that Jackson (through AEJ Holdco) continued to have a voice and the ability to protect his valuable economic interest in PCH and the entities under its control, such as TFM.  The PCH Articles were therefore amended to provide Jackson (through AEJ Holdco) with certain express consent rights.  Specifically, Article 38 of the PCH Articles as amended provides, in pertinent part, as follows:

> Notwithstanding any other provision of these Articles and without limiting the requirements for Member approvals under the Statute, the following matters shall not be undertaken by the Company without the approval of a Resolution of the Members and a Resolution of the Class A and Class B Shares:
>
> (a)    a change in the general nature of the business of the Company and its Subsidiaries and Affiliates controlled by the Company or any Subsidiary (each a "PCH Controlled Entity," and collectively, the "PCH Controlled Entities");
>
> (b)(2) an alteration to (i) the PCM GP [now TFM GP] Amended and Restated Limited Liability Company Agreement, dated as of September 29, 2008, (ii) the PCM LP [now TFM LP] Limited Partnership Agreement, dated as of July 1, 2005, or  (iii) the PCMH Limited Partnership Agreement, dated as of September 29, 2008…;
>
> (g)    save as provided herein, the creation of a new equity interest in the Company or the PCH Controlled Entities, including the creation of any arrangements for sharing income or

14

profits of the Company or any other interest of the Company whether in the form of shares, partnership or limited liability company interests, convertible securities or loan stock or capital convertible into shares of the Company or membership or partnership interests in a PCH Controlled Entity;

(j)     the making of any distribution from any PCH Controlled Entity that is not made in accordance with such entity's partnership agreement or limited liability company agreement, as applicable…

43.     As such, any purported amendment or modification to the 2005 TFM LPA or the governing documents of any other PCH Controlled Entity, specifically including but not limited to any modification that would alter the calculation of Jackson's distributions of net income from TFM, required Jackson's consent (through AEJ Holdco).

44.     In connection with the settlement, the PCH Articles were further amended to permit the holders of the Class A Shares, Class B Shares, and Class C Shares of PCH to each appoint one director to the three-member PCH board of directors ("PCH Board"). The PCH Board currently consists of Jackson, Griffith, and Ward, who was appointed by Dear.

45.     Further, pursuant to the settlement, Jackson entered into a Consultancy Agreement with PCH, Polygon Credit Holdings II Limited (100% owner of the Master Fund's voting shares), TFM GP, and TFM, dated September 29, 2008, pursuant to which Jackson continued to be a member of TFM's Investment and Risk Management Committees, to have access to and a workspace at the Tetragon Fund's offices, and to receive certain other benefits, such as health insurance, a personal assistant, and specified computer data services.

**DEFENDANTS MISAPPROPRIATE PLAINTIFFS' SHARE OF THE INCENTIVE FEE**

46.     On October 24, 2008, Ward, acting on Dear's instructions, and Griffith, over the objections of Jackson, resolved to appoint Griffith as the "Managing Director" of PCH. Under the terms of this appointment, Griffith is not authorized to take any action that would require the

15

consent of Jackson (through AEJ Holdco) as Class B Member under Article 38 of the PCH Articles.

47.     Pursuant to Section 3.1 of the 2005 TFM LPA, the management and control of the business and affairs of TFM is vested in TFM GP, its general partner.  TFM can act only through TFM GP—TFM has no independent capacity to undertake any partnership action.

48.     Pursuant to the Amended and Restated Limited Liability Company Agreement of TFM GP, effective as of September 27, 2005 (the "TFM GP Agreement"), the sole member of TFM GP is PCH.  TFM GP does not have any board of directors or manager and therefore lacks the capacity to take any action other than such action as is taken on its behalf by its sole member, PCH.  As a result, PCH, through its directors, dominates and controls TFM GP and, through TFM GP, TFM.

49.     Since 2008, Griffith, acting as managing director of PCH, has exercised control over, and executed or approved various corporate actions on behalf of PCH, TFM GP, PCMH and TFM, including those complained of herein.

50.     On January 10, 2011, Griffith and Dear again locked Jackson out of the Tetragon offices after a disagreement between Jackson and Griffith and Dear regarding a transaction entered into between Griffith and Dear and the Tetragon Fund over Jackson's objection.

51.     On January 23, 2011, at the behest of Griffith, Jackson was removed from the board of directors of the Tetragon Fund.

52.     On March 2, 2011, Griffith, acting as managing director, notified Jackson that his consultancy agreement with PCH, Polygon Credit Holdings II Limited, TFM GP, and TFM, dated September 29, 2008, was terminated.

16

53.     On March 4, 2011, Griffith, acting as managing director of PCH, caused TFM GP to remove Jackson from the Investment and Risk Committees of TFM.

54.     As a result, Jackson thereafter had no management role at TFM or with the Tetragon Fund, but Jackson (through AEJ Holdco) continued to be entitled to receive distributions from his beneficial ownership of PCH, PCMH, TFM GP, and TFM, including pursuant to the Incentive Fee Rebate Arrangement, and dividends from his investment in the non-voting shares of the Tetragon Fund.

55.     On information and belief, from the time of the IPO in 2007 through the present, none of the Founders was employed by TFM.  Rather, the sole source of their earnings from TFM was quarterly distributions of TFM profits pursuant to the 2005 TFM Limited Partnership Agreement, and the governing agreements of the other PCH Controlled Entities, as modified by the Incentive Fee Rebate Arrangement, and not wages or other employee compensation. Nonetheless, all of the Founders, including Jackson, received their pro rata portion of the Incentive Fee Rebate.  This is consistent with the fact that the Incentive Fee Rebate Arrangement never conditioned the Founders' receipt of their pro rata portion of the Rebate on their employment or management status at TFM or its affiliates.

56.     Consistent with this understanding of the arrangement, throughout this time, Defendants, with full knowledge of Jackson's active involvement (or lack thereof, due to their actions) in the management of TFM, set aside 2% of the incentive fee earned by TFM each quarter from the Tetragon Fund and distributed it to the Founders, including Jackson, in proportion to their holdings of non-voting shares of the Tetragon Fund at the time of the IPO. On information and belief, the incentive fee rebate distributions to the Founders were never paid

as wages or compensation, but simply were added to each of the Founders' quarterly income distributions and reported in their annual partner K-1 forms.

57.     During the period from the Tetragon Fund's IPO in 2007 to Q1 2013, Jackson received his pro rata portion of the incentive fee rebate in accordance with the Incentive Fee Rebate Arrangement in every quarter in which TFM earned an incentive fee.

58.     On August 23, 2013, in connection with the quarterly distribution for Q2 2013 and without any prior notice to Jackson, TFM, through its Chief Financial Officer and, on information and belief, at the direction of Griffith, (and through Griffith's control, PCH and TFM GP), for the first time took the position that an active role in the management of TFM or one of its affiliates was a condition to participating in the Incentive Fee Rebate Arrangement. Thus, TFM claimed, Jackson had "erroneously" received distributions of incentive fee rebates for nearly five years.  On that basis, PCH, TFM GP, and TFM unilaterally deducted nearly $1.5 million in prior distributions from Jackson's August 2013 partnership distribution, the bulk of which flowed back to Griffith and Dear, as well as Herlyn, Rosenberg and Wishnow, thereby breaching the Incentive Fee Rebate Arrangement or, alternatively, converting or misappropriating Jackson's funds.

59.     In a letter dated October 24, 2013, representatives for Defendants claimed that the foregoing actions were taken because Jackson was no longer an employee of TFM or the Tetragon Fund as of the date of the Consultancy Agreement, September 29, 2008, and thus he allegedly was not eligible for distributions under the Incentive Fee Rebate Arrangement. However, as evidenced by the course of conduct from inception of the arrangement to 2013, participation by the Founders in the Incentive Fee Rebate Arrangement was never conditioned on employment by or an active management role with TFM or the Tetragon Fund.  Jackson,

18

Griffith, Dear and, on information and belief, Herlyn, Rosenberg and Wishnow, were never employees of TFM or the Tetragon Fund. Rather, they were the Founders and beneficial owners of TFM, just like Jackson, and their sole source of income from TFM was quarterly income distributions, not wages. Defendants' claim otherwise, made for the first time in October 2013, was a mere contrivance designed to justify their wrongful exclusion of Jackson from the arrangement and their improper continuation and expansion of it going forward.

60.    Defendants' own explanations of the Incentive Fee Rebate Arrangement and their justification for terminating Jackson's participation in it in 2013, with retroactive effect to 2008, are inconsistent and have shifted over time. Most recently, in December 2018, Defendants, through counsel, suggested that the Incentive Fee Rebate Arrangement was not an agreement among the Founders of TFM and the other PCH Controlled Entities to modify the allocation of TFM income from that provided in the governing documents, which they effectively concede would require Jackson's consent. Rather, they apparently now claim that the arrangement is an employee compensation arrangement at TFM that is delegated to the General Partner of TFM pursuant to the TFM LPA (hereinafter the "Alleged Employee Incentive Compensation Plan"). However, on information and belief, no such employee compensation plan exists at TFM and this claim is further belied by the fact that TFM's own quarterly distribution statements and audited financials throughout the relevant time period have never recorded the deductions to the incentive fees as a compensation expense, have separately recorded compensation expenses, and have never disclosed the Alleged Employee Incentive Compensation Plan in their discussion of Related Party Transactions, employee benefit plans or otherwise.

61.    Even if the Alleged Employee Incentive Compensation Plan was an employee compensation plan of TFM, which Jackson disputes, it would violate Article 38(g) of the PCH

19

Articles by creating an arrangement for the sharing of income or profits of a PCH Controlled

Entity without Jackson's consent.  It further would exceed the authority of the General Partner

and constitute impermissible self-dealing and misappropriation of partnership assets, in breach of

the General Partner and Griffith's fiduciary duties and Griffith and Dear's contractual

obligations.  Specifically, as discussed above, TFM's General Partner is owned and controlled by

PCH, of which Griffith is the Managing Director and, together with Jackson and Dear, an owner.

According to the Tetragon Fund's annual reports, Griffith and Dear's holdings of Tetragon Fund

shares represent 80% or more of all Tetragon Fund share holdings by "insiders" who conceivably

could be participating in the Alleged Employee Incentive Compensation Plan.  Thus, the

diversion of 20% or more of TFM's incentive fee earnings to this alleged plan, representing

potentially millions of dollars each quarter, and the distribution of those funds on a pro rata basis

to its participants based on their holdings in the Tetragon Fund, simply effects a transfer of the

vast majority of those funds to Griffith and Dear, with a modest portion actually distributed to

employees of TFM and its affiliates, if indeed that is even the case.  Such a compensation plan,

including principals of the PCH Controlled Entities who already receive tens of millions of

dollars per year in income distributions, is neither necessary or advisable.  And, as a matter of

discharging their fiduciary duties to Jackson and their obligations under the PCH Articles, given

the self-dealing nature of the plan as to Griffith and Dear, Jackson would be required to be fully

informed of the details of the plan and to have consented to it, neither of which has happened.

  62.  Jackson did not agree with or consent to the foregoing actions and statements and

demanded that he continue to be included in the original Incentive Fee Rebate Arrangement if it

were to continue.  Nonetheless, Griffith, Dear and the PCH directors, under the guise of the

Alleged Employee Incentive Compensation Plan, continued and materially expanded the

20

Incentive Fee Rebate Arrangement for themselves and the other Founders, excluding only Jackson.

63.     Moreover, also without Jackson's consent and over his objection, Defendants purported to further "update" the plan/arrangement beginning in 2014 to (i) include additional employees of TFM and its affiliates who joined after the Tetragon Fund IPO; and (ii) to allocate payments in proportion to current holdings in the Fund rather than at the time of the IPO.  In addition, over the ensuing years, they caused the percentage of incentive fees deducted from TFM and distributed to participants in their unauthorized Alleged Employee Incentive Compensation Plan to balloon from 2% to over 20% of the incentive fees earned by TFM, resulting in a diversion of over $5 million and climbing (in addition to the $1.5 million deducted in August 2013) from amounts due to Jackson pursuant to his ownership interest in TFM and the PCH Controlled Entities from Q3 2013 to present.  Given that Griffith and Dear's combined holdings in the Tetragon Fund over this time were substantially greater than those of the other Founders and any employees of TFM who they may have included in this plan, on information and belief, the vast majority of the income diverted from Jackson flowed to Griffith and Dear.

64.     Pursuant to the PCH Articles, any alteration to the calculation and distribution of income of TFM from the manner provided by the TFM LPA and the governing agreements of the other PCH Controlled Entities required Jackson's consent.  Jackson never consented to the purported "modification" or adoption of Defendants' Alleged Employee Incentive Compensation Plan as described by Defendants, which operated primarily for the financial benefit of Griffith and Dear at the direct expense of Jackson.

65.     Indeed, despite requests by Jackson, Defendants have never provided him with a copy of the Alleged Employee Incentive Compensation Plan, as purportedly adopted and

modified by Defendants in 2014 or any other documentary support for that plan. That is because, on information and belief, no such documentation exists.

66.     Even if an agreement, whether oral or written, for the alteration of the calculation of distributions from the income of TFM and the PCH Controlled Entities did exist after 2013, such agreement was void in the absence of Jackson's consent.

67.     The timing of TFM, TFM GP, PCH, Griffith and Dear's sudden "realization" in 2013 that they had "erroneously" been including Jackson in the Incentive Fee Rebate Arrangement for the prior five years and their subsequent decision to "update" it going forward was not coincidental. Shortly before doing so, Griffith and Dear had sold their company Polygon Management, LP ("Polygon") to the Tetragon Fund for nearly 11.7 million shares of the Fund, which were to vest over five years beginning in 2013. As a result, their holdings in the Fund would increase exponentially over that time, both relative to Jackson and any other beneficial owners or employees of TFM. Thus, in order to further enrich themselves at the sole expense of Jackson, they concocted their Alleged Employee Incentive Compensation Plan, excluding Jackson, and not only continued it, but significantly expanded it for their personal gain, in all cases without Jackson's required consent, in violation of their contractual and fiduciary duties to Jackson

68.     Specifically, in October 2012, the Tetragon Fund announced that it had acquired Polygon, an entity owned by Griffith and Dear, for aggregate consideration of approximately 11.7 million non-voting shares of the Fund, equating to $98.5 million at the then-current share price of the Fund. Importantly, those shares were not immediately transferred to Griffith and Dear, but rather, were to vest over a five year period from 2013-2017. As a result of this transaction, Griffith and Dear's shareholdings in the Tetragon Fund would increase significantly

22

INDEX NO. 654211/2019

RECEIVED NYSCEF: 07/23/2019

Case 1:19-cv-07391-DLC   Document 1-1   Filed 08/07/19   Page 27 of 56

over that period; however, the Incentive Fee Rebate Arrangement, as understood and operated from 2007 to 2013, did not provide a mechanism for them to reimburse themselves for the incentive fees that they would be paying on those additional shares because (i) the deduction of incentive fees for the program was fixed at 2% of the incentive fees paid to TFM and (ii) the distributions of those fees were allocated based on their (and Jackson's) pro rata holdings in the Fund at the time of the IPO.

69.     In order to reimburse themselves for incentive fees paid on these millions of additional Tetragon Fund shares that they were scheduled to receive, Griffith and Dear would be required to significantly increase the percentage of the incentive fees deducted from TFM's incentive fee revenue and to allocate those fees not based on their relative holdings at the time of the IPO, but rather, based on their new, greatly increased holdings relative to other participants in the Incentive Fee Rebate Arrangement.  However, they knew that to do so would require Jackson's consent, which he would be unlikely to provide.  Thus, Griffith and Dear concocted the basis for Jackson's singular exclusion from the plan and forged ahead without regard to Jackson's rights in the PCH Controlled Entities.  By impermissibly diverting an ever-growing portion of the TFM incentive fee earnings into an incentive fee rebate fund and by allocating the incentive fee rebate according to the current relative ownership percentage in TFM, excluding Jackson's shares, Defendants Griffith and Dear—who combine to own approximately 80% of the shares counted under the Alleged Employee Incentive Compensation Plan—directed to themselves a substantially greater portion of the incentive fees earned by TFM than they are entitled to pursuant to the governing agreements of the PCH Controlled Entities.

70.     Defendants' wrongful actions violated the PCH Articles and deprived Jackson and the Jackson Trust (through AEJ Holdco) of distributions from the PCH Controlled Entities that they were entitled to receive.

## THE BENEFICIAL OWNERS ENTER INTO THE SECOND AMENDED AND RESTATED LPA OF TFM

71.     Moreover, effective October 26, 2017, the Founders, including the Class A shareholders and Class B shareholders (*i.e.*, Jackson through AEJ Holdco) of PCH, as required by Article 38 of the PCH Articles, agreed to enter into the Tetragon Financial Management LP Second Amended and Restated Limited Partnership Agreement (the "Second Amended and Restated LPA of TFM") in order to provide for the future withdrawal of Herlyn, Wishnow, and Rosenberg from the TFM partnership.  This agreement eliminated the possibility of any Incentive Fee Rebate Arrangement (or Alleged Employee Incentive Compensation Plan) existing or continuing after the October 2017 effective date.

72.     Critically, the Second Amended and Restated LPA of TFM contains an integration clause, Section 9.7, that states, in relevant part, that "this Agreement . . . supersede[s] all prior agreements and understandings among the Partners and Principals with respect to the subject matter hereof."  As a result, any oral modifications to the 2005 TFM Limited Partnership Agreement, such as the Incentive Fee Rebate Arrangement, are no longer operative.

73.     The Second Amended and Restated LPA of TFM does not provide for the distribution of an incentive fee rebate to either Founders or employees of TFM and Jackson has not consented to any such distributions as required under Article 38(b)(2)(ii), Article 38(j) and Article 38(g) of the PCH Articles.  Indeed, during the negotiation of the Second Amended and Restated LPA of TFM, Jackson was rebuffed when he asked to discuss the Incentive Fee Rebate Arrangement and, as a result, no provision for such an arrangement was made in the amended

24

agreement. Jackson would not have consented to the Second Amended and Restated LPA of

TFM, which was needed in order to provide for the future withdrawal of Herlyn, Wishnow, and

Rosenberg from the TFM partnership, if an incentive fee rebate arrangement had been included

in the agreement. The absence of a provision for such an arrangement, combined with the

integration clause in the Second Amended and Restated LPA of TFM, negates the possibility of

such an arrangement existing.

74.     Nonetheless, Defendants, at the direction of Griffith, Dear and the PCH directors,

have continued to deduct and distribute an incentive fee rebate to Griffith, Dear, Wishnow,

Rosenberg, Herlyn and, on information and belief, certain employees of TFM and its affiliates.

75.     In retrospect, it is clear that the above was all part of a plan by Defendants

Griffith and Dear to divert an ever increasing amount of revenues of TFM away from Jackson

and to distribute the same to themselves under the guise of the Incentive Fee Rebate

Arrangement, as unilaterally amended by Defendants Griffith and Dear without Jackson's

consent. Indeed, representatives for Defendants acknowledged in a letter dated December 7,

2018, that Defendants Griffith and Dear would be "substantial beneficiaries" of the "updated"

Alleged Employee Incentive Compensation Plan unilaterally instituted without Jackson's

consent. While Jackson maintains his strenuous objection to the unilateral changes in TFM

distributions through the unauthorized changes to the Incentive Fee Rebate Arrangement and the

purported enactment of Defendants' Alleged Employee Incentive Compensation Plan, even if

permissible under the TFM Limited Partnership Agreements and PCH Articles—which they are

not—such actions would represent gross mismanagement of partnership funds for the substantial

purpose of enriching Defendants Griffith and Dear at Jackson's sole expense.

## FIRST CAUSE OF ACTION
### (DELAWARE LAW)
### (BREACH OF CONTRACT--2005 TFM LIMITED PARTNERSHIP AGREEMENT)
### (AGAINST GRIFFITH, DEAR, REG HOLDCO II, PCH, AND TFM GP)

76.     Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

77.     The 2005 TFM Limited Partnership Agreement, as modified by the Incentive Fee Rebate Arrangement, constituted a valid, binding and enforceable contract under the laws of the State of Delaware.

78.     Defendant TFM GP is a party to the 2005 TFM Limited Partnership Agreement, and Defendants Griffith and Dear, through their control and domination of Defendants REG Holdco II and PCH, control and dominate Defendant TFM GP.

79.     Plaintiffs are intended third-party beneficiaries of the 2005 TFM Limited Partnership Agreement.  TFM was formed by the Founders, including Jackson, for the exclusive purpose of earning management and incentive fees to be distributed as net income to them.  The 2005 TFM Limited Partnership Agreement puts this purpose into effect by establishing the method of allocation of TFM's profits among the Founders, through various holding companies controlled, owned, and dominated by them, which are ignored by Defendants in distributing TFM's profits.

80.     The 2005 TFM Limited Partnership Agreement, as modified by the Incentive Fee Rebate Arrangement, required TFM to set aside a fixed 2% of the incentive fee it received from the Tetragon Fund and distribute that amount to the Founders and employees of TFM based solely on their pro rata ownership in the non-voting shares of the Tetragon Fund at the time of the IPO.  As a result, TFM was required to pay approximately 19% of the incentive fee it

26

distributed as part of the Incentive Fee Rebate Arrangement to Plaintiffs each quarter prior to the

termination of the 2005 TFM Limited Partnership Agreement through the adoption of the Second

Amended and Restated LPA of TFM in 2017.

81.     Defendants breached the 2005 TFM Limited Partnership Agreement, as modified

by the Incentive Fee Rebate Arrangement, in Q2 2013 and in each subsequent calendar quarter

by misappropriating the amount to which Plaintiffs are lawfully entitled and distributing such

amounts to or for the benefit of Defendants Griffith, Dear, Herlyn, Rosenberg, Wishnow, the

Griffith Trust, and certain other unknown persons.

82.     Defendants breached the 2005 TFM Limited Partnership Agreement, as modified

by the Incentive Fee Rebate Arrangement in Q2 2013 by deducting $1,137,072 from Jackson's

Q2 2013 allocation, representing amounts ($1,421,340) *already* distributed to Jackson

attributable to the incentive fee rebate from Q4 2008 through Q1 2013 minus Jackson's 20%

share of the claw back ($284,268) and distributing the remaining 80% of the claw back to

Defendants Griffith, Dear, Herlyn, Rosenberg and Wishnow.

83.     Defendants breached the 2005 TFM Limited Partnership Agreement, as modified

by the Incentive Fee Rebate Arrangement, in Q1 2014 and in each subsequent calendar quarter

by distributing the incentive fee rebate on current holdings of non-voting shares of the Tetragon

Fund held by the Founders (other than Jackson) and employees of TFM, rather than shares held

at the time of the IPO.

84.     Defendants breached the 2005 TFM Limited Partnership Agreement, as modified

by the Incentive Fee Rebate Arrangement by increasing the percentage of TFM's incentive fee

allocated for distribution as part of the incentive fee rebate from the 2% agreed to by the

27

Founders as part of the Incentive Fee Rebate Arrangement, to more than 20% of TFM's quarterly

incentive fee.

### SECOND CAUSE OF ACTION
### (DELAWARE LAW)
### (BREACH OF CONTRACT--SECOND AMENDED AND RESTATED LPA OF TFM)
### (AGAINST GRIFFITH, DEAR, REG HOLDCO II, PCH, AND TFM GP)

85.     Plaintiffs repeat and restate each of the above allegations as if fully set forth

herein.

86.     The Second Amended and Restated LPA of TFM constitutes a valid, binding and

enforceable contract under the laws of the State of Delaware.

87.     Defendant TFM GP is a party to the Second Amended and Restated LPA of TFM,

and Defendants Griffith and Dear, through their control and domination of Defendants REG

Holdco II and PCH, control and dominate Defendant TFM GP.

88.     Plaintiffs are intended third-party beneficiaries of the Second Amended and

Restated LPA of TFM.  TFM was formed by the Founders, including Jackson, for the exclusive

purpose of earning management and incentive fees to be distributed as net income to them.  The

Second Amended and Restated LPA of TFM puts this purpose into effect by establishing the

method of allocation of TFM's profits among the Founders, through various holding companies

controlled, owned, and dominated by them, which are ignored by Defendants in distributing

TFM's profits.

89.     The Second Amended and Restated LPA of TFM does not provide for the

distribution of an incentive fee rebate to either Founders or employees of TFM.

90.     Defendants breached the Second Amended and Restated LPA of TFM by

distributing an incentive fee rebate to the Founders (other than Jackson) and/or employees of the

Tetragon Fund and its affiliates.

28

### THIRD CAUSE OF ACTION
### (DERIVATIVE CLAIM ON BEHALF OF PCMH)
### (DELAWARE LAW)
### (BREACH OF CONTRACT--2005 TFM LIMITED PARTNERSHIP AGREEMENT)
### (AGAINST GRIFFITH, DEAR, REG HOLDCO II, PCH, AND TFM GP)

91.    Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

92.    This claim is brought derivatively on behalf of PCMH to redress injuries suffered by PCMH as a direct result of Defendants' breach of the 2005 TFM Limited Partnership Agreement.

93.    Plaintiff has not made any demand on the partners of PCMH to institute this action since demand would be a futile and useless act.  PCMH is controlled and dominated by Defendants Griffith and Dear, who combine to own 60% of PCH, the majority partner in PCMH. Further, PCMH can only act through its general partner, TFM GP, which itself can only act through its sole member, PCH, for which Defendant Griffith acts as the "managing director."

94.    Defendants Griffith and Dear are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for the reasons set forth in this Complaint, including that both have received and will continue to receive a significant personal financial benefit as a result of Defendants' breach of the 2005 TFM Limited Partnership Agreement.

95.    The 2005 TFM Limited Partnership Agreement, as modified by the Incentive Fee Rebate Arrangement, constituted a valid, binding and enforceable contract under the laws of the State of Delaware.

29

96.     Defendant TFM GP is a party to the 2005 TFM Limited Partnership Agreement, and Defendants Griffith and Dear, through their control and domination of Defendants REG Holdco II and PCH, control and dominate Defendant TFM GP.

97.     PCMH is a limited partner in TFM, and, as such, a party to the 2005 TFM Limited Partnership Agreement.

98.     The 2005 TFM Limited Partnership Agreement, as modified by the Incentive Fee Rebate Arrangement, required TFM to set aside a fixed 2% of the incentive fee it received from the Tetragon Fund and distribute that amount to the Founders and employees of TFM based solely on their pro rata ownership in the non-voting shares of the Tetragon Fund at the time of the IPO.  As a result, TFM was required to pay approximately 19% of the incentive fee it distributed as part of the Incentive Fee Rebate Arrangement to Plaintiffs each quarter prior to the termination of the 2005 TFM Limited Partnership Agreement through the adoption of the Second Amended and Restated LPA of TFM in 2017.

99.     Defendants breached the 2005 TFM Limited Partnership Agreement, as modified by the Incentive Fee Rebate Arrangement, in Q2 2013 and in each subsequent calendar quarter by misappropriating the amount to which Plaintiffs were and are lawfully entitled and distributing such amounts to or for the benefit of Defendants Griffith, Dear, Herlyn, Rosenberg, Wishnow, the Griffith Trust, and certain other unknown persons.

100.    Defendants breached the 2005 TFM Limited Partnership Agreement, as modified by the Incentive Fee Rebate Arrangement in Q2 2013 by deducting $1,137,072 from Jackson's Q2 2013 allocation, representing amounts ($1,421,340) *already* distributed to Jackson attributable to the incentive fee rebate from Q4 2008 through Q1 2013 minus Jackson's 20%

30

share of the claw back ($284,268) and distributing the remaining 80% of the claw back to

Defendants Griffith, Dear, Herlyn, Rosenberg and Wishnow.

101.    Defendants breached the 2005 TFM Limited Partnership Agreement, as modified

by the Incentive Fee Rebate Arrangement, in Q1 2014 and in each subsequent calendar quarter

by distributing the incentive fee rebate on current holdings of non-voting shares of the Tetragon

Fund held by the Founders (other than Jackson) and employees of TFM, rather than shares held

at the time of the IPO.

102.    Defendants breached the 2005 TFM Limited Partnership Agreement, as modified

by the Incentive Fee Rebate Arrangement by increasing the percentage of TFM's incentive fee

allocated for distribution as part of the incentive fee rebate from the 2% agreed to by the

Founders as part of the Incentive Fee Rebate Arrangement, to more than 20% of TFM's

incentive fee.

## FOURTH CAUSE OF ACTION
## (DERIVATIVE CLAIM ON BEHALF OF PCMH)
## (DELAWARE LAW)
## (BREACH OF CONTRACT--SECOND AMENDED AND RESTATED LPA OF TFM)
## (AGAINST GRIFFITH, DEAR, REG HOLDCO II, PCH, AND TFM GP)

103.    Plaintiffs repeat and restate each of the above allegations as if fully set forth

herein.

104.    This claim is brought derivatively on behalf of PCMH to redress injuries suffered

by PCMH as a direct result of Defendants' breach of the Second Amended and Restated LPA of

TFM.

105.    Plaintiff has not made any demand on the partners of PCMH to institute this

action since demand would be a futile and useless act.  PCMH is controlled and dominated by

Defendants Griffith and Dear, who combine to own 60% of PCH, the majority partner in PCMH.

31

Case 1:19-cv-07391-DLC   Document 1-1   Filed 08/07/19   Page 36 of 56

Further, PCMH can only act through its general partner, TFM GP, which itself can only act through its sole member, PCH, for which Defendant Griffith acts as the "managing director."

106.    Defendants Griffith and Dear are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for the reasons set forth in this Complaint, including that both have and continue to receive a personal financial benefit as a result of Defendants breach of the Second Amended and Restated LPA of TFM.

107.    The Second Amended and Restated LPA of TFM constitutes a valid, binding and enforceable contract under the laws of the State of Delaware.

108.    Defendant TFM GP is a party to the Second Amended and Restated LPA of TFM, and Defendants Griffith and Dear, through their control and domination of Defendants REG Holdco II and PCH, control and dominate Defendant TFM GP.

109.    PCMH is a limited partner in TFM, and, as such, a party to the Second Amended and Restated LPA of TFM.

110.    The Second Amended and Restated LPA of TFM does not provide for the distribution of an incentive fee rebate to either Founders or employees of TFM.

111.    Defendants breached the Second Amended and Restated LPA of TFM by distributing an incentive fee rebate to the Founders (other than Jackson) and/or employees of the Tetragon Fund and its affiliates.

### FIFTH CAUSE OF ACTION
### (CAYMAN ISLANDS LAW)
### (UNAUTHORIZED, INVALID ACTS IN VIOLATION
### OF CORPORATE CHARTER--PCH ARTICLES)
### (AGAINST PCH, REG HOLDCO II,  AND DEAR)

112.    Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

32

113.     The PCH Articles constitute valid, binding, and enforceable corporate

constitutional documents under the Companies Law (amended and revised) of the Cayman

Islands.

114.     REG Holdco II, AEJ Holdco, and Dear are the members of PCH.  Griffith owns

or controls all of the shares of REG Holdco II, while Jackson owns or controls all of the shares of

AEJ Holdco.

115.     Article 38 of the PCH Articles requires Plaintiffs' consent for certain corporate

actions undertaken by PCH.  Article 38(b)(2)(ii) and Article 38(j) of the PCH Articles prohibit,

in relevant part, "an alteration to the [TFM Limited Partnership Agreement]" and "the making of

any distribution from any PCH Controlled Entity that is not made in accordance with such

entity's partnership agreement or limited liability company agreement" without Plaintiffs'

consent as Class B Member.

116.     Defendants amended the 2005 TFM Limited Partnership Agreement, as modified

by the Incentive Fee Rebate Arrangement, and the Second Amended and Restated LPA of TFM

by changing the terms of the Incentive Fee Rebate Arrangement.  Plaintiffs did not consent to

this amendment, as required under Article 38 of the PCH Articles.  The amendment is

unauthorized and an invalid act under the terms of the PCH Articles and Cayman Islands law.

117.     Defendants also caused a PCH Controlled Entity, TFM, to make distributions not

in accordance with TFM's limited partnership agreement without Plaintiffs' consent.  These

distributions are unauthorized and an invalid act under the terms of the PCH Articles and

Cayman Islands law.

118.     Further, Article 38(g) of the PCH Articles prohibits, in relevant part, "the creation

of a new equity interest in [PCH] or the PCH Controlled Entities, including the creation of any

33

arrangements for sharing income or profits of [PCH] or any other interest of [PCH]."

Defendants created a new equity or income sharing interest in PCH and TFM through their

Alleged Employee Incentive Compensation Plan that creates a new and different arrangement for

the sharing of income or profits of TFM and PCH, specifically the incentive fee income received

by TFM from the Tetragon Fund.  Plaintiffs did not consent to this Alleged Employee Incentive

Compensation Plan, as required under Article 38 of the PCH Articles.  The creation of this new

equity or income sharing interest is an unauthorized and an invalid act under the terms of the

PCH Articles and Cayman Islands law.

### SIXTH CAUSE OF ACTION
### (DELAWARE LAW)
### (BREACH OF FIDUCIARY DUTY)
### (AGAINST GRIFFITH, DEAR, WARD, PCH, AND TFM GP)

119.    Plaintiffs repeat and restate each of the above allegations as if fully set forth

herein.

120.    As the general partner of TFM and PCMH, TFM GP owed the fiduciary duty to

exercise the utmost good faith, fairness and loyalty to its limited partners.

121.    The fiduciary duty of TFM GP to the limited partners of TFM and PCMH

extended to its beneficial owners and intended beneficiaries, including Plaintiffs.

122.    TFM GP breached its fiduciary duty to Plaintiffs by causing TFM and PCMH to

misappropriate and unlawfully divert to other persons Plaintiffs' share of TFM's incentive fees

and other funds of TFM and PCMH.

123.    Griffith, Dear, Ward and PCH are jointly and severally liable for the breach of

fiduciary duty by TFM GP because each of them was aware that a fiduciary relationship existed,

each of them knowingly participated in the breach, and damages resulted to Plaintiffs from the

34

breach of fiduciary duty by TFM GP. In addition, Griffith effectively controlled TFM GP as the purported managing director of PCH.

124. Further, Defendants Griffith, Dear, and Ward (and through them TFM GP) acted in bad faith and without a reasonable belief that their actions were in the best interest of the partnership. Defendants grossly mismanaged partnership funds for the substantial purpose of enriching themselves by diverting an ever increasing percentage of the incentive fee earned by TFM and belonging to the partnership to their own pockets by increasing the size of the incentive fee rebate and their portion of it. In so doing, Defendants Griffith, Dear, and Ward engaged in self-dealing in violation of the fiduciary duties Defendants owed to Jackson.

## SEVENTH CAUSE OF ACTION
### (DERIVATIVE CLAIM ON BEHALF OF PCMH)
### (DELAWARE LAW)
### (BREACH OF FIDUCIARY DUTY)
### (AGAINST GRIFFITH, DEAR, WARD, PCH, AND TFM GP)

125. Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

126. This claim is brought derivatively on behalf of PCMH to redress injuries suffered by PCMH as a direct result of Defendants' breach of their fiduciary duties which have deprived PCMH of fees it would otherwise be entitled to.

127. Plaintiff has not made any demand on the partners of PCMH to institute this action since demand would be a futile and useless act. PCMH is controlled and dominated by Defendants Griffith and Dear, who combine to own 60% of PCH, the majority partner in PCMH. Further, PCMH can only act through its general partner, TFM GP, which itself can only act through its sole member, PCH, for which Defendant Griffith acts as the "managing director."

35

128.    Defendants Griffith and Dear are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for the reasons set forth in this Complaint, including that both have and continue to receive a personal financial benefit as a result of Defendants breach of their fiduciary duties.

129.    As the general partner of TFM and PCMH, TFM GP owed the fiduciary duty to exercise the utmost good faith, fairness and loyalty to its limited partners.

130.    TFM GP breached its fiduciary duty by causing TFM to misappropriate and unlawfully divert to other persons Plaintiff's share of the incentive fee rebate and other funds of TFM and PCMH.

131.    Griffith, Dear, Ward and PCH are jointly and severally liable for the breach of fiduciary duty by TFM GP because each of them was aware that a fiduciary relationship existed, each of them knowingly participated in the breach, and damages resulted from the breach of fiduciary duty by TFM GP.  In addition, Griffith effectively controlled TFM GP as the purported managing director of PCH.

132.    Further, Defendants Griffith, Dear, and Ward (and through them TFM GP) acted in bad faith and without a reasonable belief that their actions were in the best interest of the partnership.  Defendants grossly mismanaged partnership funds for the substantial purpose of enriching themselves by diverting an ever increasing percentage of the incentive fee earned by TFM and belonging to the partnership to their own pockets by increasing the size of the incentive fee rebate and their portion of it.  In so doing, Defendants Griffith, Dear, and Ward engaged in self-dealing in violation of the fiduciary duties Defendants owed to PCMH.

36

Case 1:19-cv-07391-DLC   Document 1-1   Filed 08/07/19   Page 41 of 56

## EIGHTH CAUSE OF ACTION
### (DERIVATIVE CLAIM ON BEHALF OF PCH)
### (CAYMAN ISLANDS LAW)
### (BREACH OF FIDUCIARY DUTY)
### (AGAINST GRIFFITH AND WARD)

133.    Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

134.    This claim is brought derivatively on behalf of PCH to redress injuries suffered by PCH as a direct result of Defendants' breach of their fiduciary duties which have deprived PCH of fees it would otherwise be entitled to.

135.    Plaintiff has not made any demand on the directors of PCH to institute this action since demand would be a futile and useless act.  PCH is controlled and dominated by Defendants Griffith and Dear, who combine to own 60% of the company's shares, and control two of the company's three directors (including Ward).  Further, Defendant Griffith acts as the PCH "managing director."

136.    Defendants Griffith, Dear and Ward are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for the reasons set forth in this Complaint, including that both have and continue to receive a significant personal financial benefit as a result of Defendants breach of their fiduciary duties.

137.    In bad faith, and in breach of their duty of fairness and loyalty to PCH, and with deliberate disregard and reckless indifference to Plaintiffs' rights, Griffith and Ward caused PCH through TFM GP, PCMH and TFM, to misappropriate and divert Plaintiffs' share of the incentive fees and other funds, to themselves and other persons, excluding Plaintiffs.

138.    Further, Defendants Griffith and Ward (and through them, TFM GP) acted in bad faith and without a reasonable belief that their actions were in the best interest of the company.

37

Defendants grossly mismanaged company funds for the substantial purpose of enriching themselves by diverting an ever increasing percentage of the incentive fee earned by TFM and belonging to the company to their own pockets by increasing the size of the incentive fee rebate and their portion of it.  In so doing, Defendants Griffith, and Ward engaged in self-dealing in violation of the fiduciary duties Defendants owed to PCH.

**NINTH CAUSE OF ACTION**
**(DELAWARE LAW)**
**(INTENTIONAL INTERFERENCE WITH PERFORMANCE OF CONTRACT--2005 TFM LIMITED PARTNERSHIP AGREEMENT)**
**(AGAINST GRIFFITH)**

139.    Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

140.    The 2005 TFM Limited Partnership Agreement, as amended by the Incentive Fee Rebate Arrangement, constituted a valid, binding and enforceable contract under the laws of the State of Delaware.

141.    The 2005 TFM Limited Partnership Agreement, as amended by the Incentive Fee Rebate Arrangement, required TFM to distribute approximately 19% of the incentive fee rebate to Plaintiffs.

142.    Defendant Griffith knew that the TFM Limited Partnership Agreement, as amended by the Incentive Fee Rebate Arrangement, required TFM to distribute approximately 19% of the incentive fee rebate to Plaintiffs.

143.    Defendant Griffith, without justification, in bad faith and with deliberate disregard and reckless indifference to Plaintiffs' rights to receive the Incentive Fee Rebate, caused TFM to breach its contract with Plaintiffs.

38

144.    In doing so Defendant Griffith acted outside the scope of his authority both as the purported managing director of PCH and as a director of PCH as, pursuant to Article 38 of the PCH Articles, Griffith was not authorized to take such actions without Jackson's consent.

145.    Defendant Griffith's actions constituting interference with TFM's performance of its contract with Plaintiffs caused damages to Plaintiffs.

## TENTH CAUSE OF ACTION
### (DELAWARE LAW)
### (INTENTIONAL INTERFERENCE WITH PERFORMANCE OF CONTRACT-- SECOND AMENDED AND RESTATED LPA OF TFM) (AGAINST GRIFFITH)

146.    Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

147.    The Second Amended and Restated LPA of TFM constitutes a valid, binding and enforceable contract under the laws of the State of Delaware.

148.    Defendant Griffith knew that the Second Amended and Restated LPA of TFM does not provide for the distribution of an incentive fee rebate to either Founders or employees of TFM.

149.    Defendant Griffith, without justification, in bad faith and with deliberate disregard and reckless indifference to Plaintiffs' rights to receive distributions in accordance with the Second Amended and Restated LPA of TFM caused TFM to breach its contract with Plaintiffs.

150.    In doing so Defendant Griffith acted outside the scope of his authority both as the purported managing director of PCH and as a director of PCH as, pursuant to Article 38 of the PCH Articles, Griffith was not authorized to take such actions without Jackson's consent.

151.    Defendant Griffith's actions constituting interference with TFM's performance of its contract with Plaintiffs caused damages to Plaintiffs.

39

## ELEVENTH CAUSE OF ACTION
### (CAYMAN ISLANDS LAW)
### (PROCURING A BREACH OF CONTRACT --PCH ARTICLES)
### (AGAINST GRIFFITH)

152.    Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

153.    The PCH Articles constitute valid, binding, and enforceable corporate constitutional documents under the Companies Law (amended and revised) of the Cayman Islands and a contract among PCH and its shareholders.

154.    Plaintiffs own all of the Class B shares of PCH.

155.    Article 38 of the PCH Articles require Plaintiffs' consent for certain corporate actions undertaken by PCH.  Article 38(b)(2)(ii) and Article 38(j) of the PCH Articles prohibits, in relevant part, "an alteration to the [TFM Limited Partnership Agreement]" and "the making of any distribution from any PCH Controlled Entity that is not made in accordance with such entity's partnership agreement or limited liability company agreement" without Plaintiffs' consent as Class B Member.  Article 38(g) of the PCH Articles prevents, in relevant part, "the creation of any arrangements for sharing income or profits of the Company or any other interest of the Company" without Plaintiffs' consent as Class B Member.

156.    Defendant Griffith knew that the PCH Articles required Plaintiffs' consent to any amendment to the TFM Limited Partnership Agreement and to any distribution from a PCH Controlled Entity that is not made in accordance with such entity's partnership agreement or limited liability company agreement.

157.    Defendant Griffith, without justification, in bad faith and with the intent to interfere with Plaintiffs' rights under the PCH Articles, caused PCH to breach its contract with Plaintiffs by modifying the 2005 TFM Limited Partnership Agreement, as amended by the

40

Incentive Fee Rebate Arrangement, and the Second Amended and Restated LPA of TFM,

without Plaintiffs' consent.

158.    Further, Defendant Griffith, without justification, in bad faith and with the intent

to interfere with Plaintiffs' rights under the PCH Articles, caused a PCH Controlled Entity, TFM,

to make distributions not in accordance with TFM's limited partnership agreements without

Plaintiffs' consent.

159.    Defendant Griffith acted outside the scope of his authority both as the purported

managing director of PCH and as a director of PCH as, pursuant to Article 38 of the PCH

Articles, Griffith was not authorized to take such actions without Jackson's consent.

160.    Defendant Griffith's actions in procuring the breach of PCH's contract with

Plaintiffs caused damages to Plaintiffs.

**TWELFTH  CAUSE OF ACTION**
**(DERIVATIVE CLAIM ON BEHALF OF PCMH)**
**(DELAWARE LAW)**
**(INTENTIONAL INTERFERENCE WITH PERFORMANCE OF CONTRACT--2005**
**TFM LIMITED PARTNERSHIP AGREEMENT)**
**(AGAINST GRIFFITH)**

161.    Plaintiffs repeat and restate each of the above allegations as if fully set forth

herein.

162.    This claim is brought derivatively on behalf of PCMH to redress injuries suffered

by PCMH as a direct result of Defendants' intentional interference with the performance of the

2005 TFM Limited Partnership Agreement.

163.    Plaintiff has not made any demand on the partners of PCMH to institute this

action since demand would be a futile and useless act.  PCMH is controlled and dominated by

Defendants Griffith and Dear, who combine to own 60% of PCH, the majority partner in PCMH.

41

Further, PCMH can only act through its general partner, TFM GP, which itself can only act

through its sole member, PCH, for which Defendant Griffith acts as the "managing director."

164.    Defendants Griffith and Dear are incapable of disinterestedly and independently

considering a demand to commence and vigorously prosecute this action for the reasons set forth

in this Complaint, including that both have and continue to receive a significant personal

financial benefit as a result of the breach of the 2005 TFM Limited Partnership Agreement.

165.    The 2005 TFM Limited Partnership Agreement, as amended by the Incentive Fee

Rebate Arrangement, constituted a valid, binding and enforceable contract under the laws of the

State of Delaware.

166.    The 2005 TFM Limited Partnership Agreement, as amended by the Incentive Fee

Rebate Arrangement, required TFM to distribute approximately 19% of the incentive fee rebate

to Plaintiffs.

167.    Defendant Griffith knew that the TFM Limited Partnership Agreement, as

amended by the Incentive Fee Rebate Arrangement, required TFM to distribute approximately

19% of the incentive fee rebate to Plaintiffs.

168.    Defendant Griffith, without justification, in bad faith and with deliberate disregard

and reckless indifference to Plaintiffs' rights to receive the Incentive Fee Rebate, caused TFM to

breach its contract with Plaintiffs.

169.    In doing so Defendant Griffith acted outside the scope of his authority both as the

purported managing director of PCH and as a director of PCH as, pursuant to Article 38 of the

PCH Articles, Griffith was not authorized to take such actions without Jackson's consent.

170.    Defendant Griffith's actions constituting interference with TFM's performance of

its contract with Plaintiffs caused damages to Plaintiffs.

42

## THIRTEENTH CAUSE OF ACTION
### (DERIVATIVE CLAIM ON BEHALF OF PCMH)
### (DELAWARE LAW)
### (INTENTIONAL INTERFERENCE WITH PERFORMANCE OF CONTRACT--
### SECOND AMENDED AND RESTATED LPA OF TFM)
### (AGAINST GRIFFITH)

171.    Plaintiffs repeat and restate each of the above allegations as if fully set forth

herein.

172.    This claim is brought derivatively on behalf of PCMH to redress injuries suffered

by PCMH as a direct result of Defendants' intentional interference with the performance of the

Second Amended and Restated LPA of TFM.

173.    Plaintiff has not made any demand on the partners of PCMH to institute this

action since demand would be a futile and useless act.  PCMH is controlled and dominated by

Defendants Griffith and Dear, who combine to own 60% of PCH, the majority partner in PCMH.

Further, PCMH can only act through its general partner, TFM GP, which itself can only act

through its sole member, PCH, for which Defendant Griffith acts as the "managing director."

174.    Defendants Griffith and Dear are incapable of disinterestedly and independently

considering a demand to commence and vigorously prosecute this action for the reasons set forth

in this Complaint, including that both have and continue to receive a significant personal

financial benefit as a result of the breach of the Second Amended and Restated LPA of TFM.

175.    The Second Amended and Restated LPA of TFM constitutes a valid, binding and

enforceable contract under the laws of the State of Delaware.

176.    Defendant Griffith knew that the Second Amended and Restated LPA of TFM

does not provide for the distribution of an incentive fee rebate to either Founders or employees of

TFM.

43

Case 1:19-cv-07391-DLC   Document 1-1   Filed 08/07/19   Page 48 of 56

177.     Defendant Griffith, without justification, in bad faith and with deliberate disregard and reckless indifference to Plaintiffs' rights to receive distributions in accordance with the Second Amended and Restated LPA of TFM caused TFM to breach its contract with Plaintiffs.

178.     In doing so Defendant Griffith acted outside the scope of his authority both as the purported managing director of PCH and as a director of PCH as, pursuant to Article 38 of the PCH Articles, Griffith was not authorized to take such actions without Jackson's consent.

179.     Defendant Griffith's actions constituting interference with TFM's performance of its contract with Plaintiffs caused damages to Plaintiffs.

**FOURTEENTH CAUSE OF ACTION**
**(DERIVATIVE CLAIM ON BEHALF OF PCH)**
**(CAYMAN ISLANDS LAW)**
**(PROCURING A BREACH OF CONTRACT --PCH ARTICLES)**
**(AGAINST GRIFFITH)**

180.     Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

181.     This claim is brought derivatively on behalf of PCH to redress injuries suffered by PCH as a direct result of Defendants' unlawful interference with the PCH Articles.

182.     Plaintiff has not made any demand on the directors of PCH to institute this action since demand would be a futile and useless act.  PCH is controlled and dominated by Defendants Griffith and Dear, who combine to own 60% of the company's shares, and control two of the company's three directors.  Further, Defendant Griffith acts as the PCH "managing director."

183.     Defendants Griffith and Dear are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for the reasons set forth in this Complaint, including that both have and continue to receive a significant personal financial benefit as a result of the breach of the PCH Articles.

44

184.     The PCH Articles constitute valid, binding, and enforceable corporate constitutional documents under the Companies Law (amended and revised) of the Cayman Islands and a contract among PCH and its shareholders.

185.     Plaintiffs own all of the Class B shares of PCH.

186.     Article 38 of the PCH Articles require Plaintiffs' consent for certain corporate actions undertaken by PCH.  Article 38(b)(2)(ii) and Article 38(j) of the PCH Articles prohibits, in relevant part, "an alteration to the [TFM Limited Partnership Agreement]" and "the making of any distribution from any PCH Controlled Entity that is not made in accordance with such entity's partnership agreement or limited liability company agreement" without Plaintiffs' consent as Class B Member.  Article 38(g) of the PCH Articles prevents, in relevant part, "the creation of any arrangements for sharing income or profits of the Company or any other interest of the Company" without Plaintiffs' consent as Class B Member.

187.     Defendant Griffith knew that the PCH Articles required Plaintiffs' consent to any amendment to the TFM Limited Partnership Agreement and to any distribution from a PCH Controlled Entity that is not made in accordance with such entity's partnership agreement or limited liability company agreement.

188.     Defendant Griffith, without justification, in bad faith and with the intent to interfere with Plaintiffs' rights under the PCH Articles, caused a breach of the PCH Articles by modifying the 2005 TFM Limited Partnership Agreement, as amended by the Incentive Fee Rebate Arrangement, and the Second Amended and Restated LPA of TFM, without Plaintiffs' consent.

189.     Further, Defendant Griffith, without justification, in bad faith and with the intent to interfere with Plaintiffs' rights under the PCH Articles caused a PCH Controlled Entity, TFM,

45

to make distributions not in accordance with TFM's limited partnership agreements without Plaintiffs' consent.

190.     Defendant Griffith acted outside the scope of his authority both as the purported managing director of PCH and as a director of PCH as, pursuant to Article 38 of the PCH Articles, Griffith was not authorized to take such actions without Jackson's consent.

191.     Defendant Griffith's actions  in procuring the breach of PCH's contract with Plaintiffs caused damages to PCH by depriving it of income it would otherwise be entitled to.

**FIFTEENTH CAUSE OF ACTION**
**(DELAWARE LAW AND CAYMAN ISLANDS LAW)**
**(UNJUST ENRICHMENT)**
**(GRIFFITH, DEAR, HERLYN, ROSENBERG, WISHNOW, HRW, THE GRIFFITH TRUST AND CERTAIN OTHER UNKNOWN PERSONS)**

192.     Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

193.     In the manner described above, Griffith, Dear, Herlyn, Rosenberg, Wishnow, HRW, the Griffith Trust and certain other unknown persons each have obtained a portion of the incentive fee rebate, as well as the portion of the income generated by TFM, belonging to Plaintiffs.

194.     The diversion of Plaintiffs' share of the incentive fee rebate and TFM income by Defendants Griffith, Dear, Ward, PCH, and TFM GP to Griffith, Dear, Herlyn, Rosenberg, Wishnow, HRW, the Griffith Trust and certain other unknown persons and their continued retention of Plaintiffs' share of the incentive fee rebate and TFM income was and is unlawful and unjustified.

195.     Defendants Griffith, Dear, Herlyn, Rosenberg, Wishnow, HRW, the Griffith Trust and certain other unknown persons gave no consideration for their receipt of Plaintiffs' share of

46

the incentive fee rebate and TFM income, knew this to be the case, and have no legitimate claim to these funds.

196.    Therefore, Defendants Griffith, Dear, Ward, PCH, TFM GP and certain other unknown persons have been unjustly enriched, while Plaintiffs have been impoverished.

197.    Should Plaintiffs lack an adequate legal remedy to recover the amounts of the incentive fee rebate and TFM income that were unjustifiably distributed to Griffith, Dear, Herlyn, Rosenberg, Wishnow, HRW, the Griffith Trust and certain other unknown persons, they are equitably entitled to recover in unjust enrichment.

**SIXTEENTH CAUSE OF ACTION**
**(DERIVATIVE CLAIM ON BEHALF OF PCMH)**
**(DELAWARE LAW)**
**(WASTE OF PARTNERSHIP ASSETS)**
**(AGAINST GRIFFITH, DEAR,WARD, PCH, AND TFM GP)**

198.    Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

199.    This claim is brought derivatively on behalf of PCMH to redress injuries suffered by PCMH as a direct result of Defendants' waste of partnership assets.

200.    Plaintiff has not made any demand on the partners of PCMH to institute this action since demand would be a futile and useless act.  PCMH is controlled and dominated by Defendants Griffith and Dear, who combine to own 60% of PCH, the majority partner in PCMH. Further, PCMH can only act through its general partner, TFM GP, which itself can only act through its sole member, PCH, for which Defendant Griffith acts as the "managing director."

201.    Defendants Griffith and Dear are incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action for the reasons set forth

47

in this Complaint, including that both have and continue to receive a significant personal financial benefit as a result of their waste of partnership assets.

202.    On information and belief, the employees participating in the Alleged Employee Incentive Compensation Plan are not employed by TFM, but are employees of Polygon that provide services to TFM under a shared services agreement between TFM and Polygon.  As Polygon employees, Polygon, on information and belief, pays them a salary and bonus, a portion of which Polygon charges to TFM based on the work performed by their employees for TFM.

203.    On information and belief, Griffith, Dear, Ward, PCH and TFM GP have caused TFM to distribute a portion of the incentive fee received by TFM to certain unknown persons who are not employed by TFM and who are already compensated for their services, including their services to TFM, by Polygon.

204.    The consideration TFM receives for such payments is so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade and is in effect a gift to the persons receiving such payments.

205.    The distribution of the incentive fee to persons who are not employed by TFM and who are already compensated for their services by Polygon constitutes a waste of partnership assets.

206.    Plaintiffs have been damaged to the extent that the portion of the incentive fee that should have been distributed to them has been distributed to persons who are not employed by or perform services for TFM.

**SEVENTEETH CAUSE OF ACTION**
**(DECLARATORY JUDGMENT)**

207.    Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

48

Case 1.19-cv-07391-DLC   Document 1-1   Filed 08/07/19   Page 53 of 56

208.   This declaratory judgment action is brought pursuant to N.Y. CPLR § 3001.

209.   An actual justiciable controversy exists between Plaintiffs and Defendants within the meaning of N.Y. CPLR § 3001 regarding the existence of the Alleged Employee Incentive-Compensation Plan and whether such a plan, to the extent it modifies the PCH Articles, is void without the consent of Jackson (through his ownership and control of the Class B Shares of PCH).

210.   Plaintiffs request a declaration by this Court that the Alleged Employee Incentive-Compensation Plan does not exist, and that such a plan, to the extent it modifies the PCH Articles, is void without the consent of Jackson (through his ownership and control of the Class B Shares of PCH).

## DEMAND FOR AN ACCOUNTING

211.   Plaintiffs repeat and restate each of the above allegations as if fully set forth herein.

212.   As described supra, Defendants Griffith, Dear, Ward, PCH and TFM GP each have a fiduciary relationship with Plaintiffs and are responsible for the accurate distribution of funds, including the incentive fees received by TFM from the Tetragon Fund and TFM's profits, to Plaintiffs.

213.   As alleged herein, Defendants have breached their fiduciary duties to Plaintiffs resulting in damage to Plaintiffs.

214.   Defendants possess complete control over the books and records of PCH, TFM GP, and TFM concerning the details of the unlawful distributions to the Founders and/or payments to unknown employees

49

215.    Plaintiffs demand an accounting be made of (i) all distributions and/or payments

to the Founders, (ii) all payments allegedly made to employees as part of Defendants' alleged

Incentive Fee Reimbursement Plan, and (iii) any other allocation of the income received by TFM

from the Tetragon Fund.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

a.      An award of damages to Plaintiffs jointly and severally against Defendants for

amounts TFM is contractually obligated to distribute to Plaintiffs under the terms of the 2005

TFM Limited Partnership Agreement, as amended by the Incentive Fee Rebate Arrangement,

and the Second Amended and Restated LPA of TFM;

b.      An award of damages to Plaintiffs against Defendants for breach of the PCH

Articles;

c.      An award of damages to Plaintiffs for breach of fiduciary duty by Griffith, Dear,

Ward, PCH and TFM GP;

d.      An award of damages to Plaintiffs against Defendant Griffith for intentional

interference with Plaintiffs' contracts;

e.      An award of damages to Plaintiffs against Defendant Griffith for unlawful

interference;

f.      An award of punitive damages to Plaintiffs against Defendants Griffith, Dear and

Ward to punish them for their wrongful acts toward Plaintiffs and to discourage them and others

from similar conduct in the future;

50

Case 1:19-cv-07391-DLC   Document 1-1   Filed 08/07/19   Page 55 of 56

g.      An award of damages to Plaintiffs against Defendants Griffith, Dear, Herlyn,

Rosenberg, Wishnow, the Griffith Trust and certain unknown other persons for unjust

enrichment;

h.      An award of damages to Plaintiffs against Defendants Griffith, Dear, Ward, PCH

and TFM GP for waste of partnership assets;

i.      A declaration by this Court that the Alleged Employee Incentive Compensation

Plan does not exist, and that such a plan, to the extent it modifies the PCH Articles, is void

without the consent of Jackson (through his ownership and control of the Class B Shares of

PCH);

j.      An award to Plaintiffs against Defendants for the costs and disbursements of this

action;

k.      An order requiring Defendants Griffith, Dear, Ward, PCH, and TFM GP to

provide an accounting;

l.      An award of pre- and post-judgment interest; and

m.      Such other and further relief as this Court may deem just and proper.

51

Dated:   New York, New York
         July 23, 2019

                            Respectfully Submitted,


                            ARNOLD & PORTER KAYE SCHOLER LLP


                    By: ___/s/ Eric N. Whitney_____
                            Eric N. Whitney
                            Diana E. Mahoney
                            Harry K. Fidler
                            250 West 55th Street
                            New York, New York 10019
                            (212) 836-8000 (Telephone)
                            (212) 836-8689 (Facsimile)
                            eric.whitney@arnoldporter.com
                            diana.mahoney@arnoldporter.com
                            harry.fidler@arnoldporter.com

                            *Attorneys for Plaintiffs*